UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER CHAMBERLIN, | Case No. 19-cv-08243-JCS |
| Plaintiff, | |
| v. | **ORDER REGARDING MOTION TO DISMISS, MOTION TO STRIKE, AND MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| HARTOG, BAER & HAND, APC, et al., | |
| Defendants. | Re: Dkt. Nos. 10, 11, 30 |

## I.    INTRODUCTION

Plaintiff Christopher Chamberlin, pro se, brings this action against his former attorneys, Defendants Hartog, Baer & Hand, APC ("HBH") and its three named partners David Baer, John Hartog, and Margaret Hand, asserting claims for fraudulent inducement, breach of fiduciary duty and the duty of loyalty, malpractice, and declaratory judgment that his retainer agreement with HBH is void.  The thrust of Christopher Chamberlin's claims is that Defendants failed to disclose a purported conflict of interest with respect to Michael Levin, who is Christopher Chamberlin's uncle, served as the executor of Christopher Chamberlin's mother Jane Chamberlin's estate, and was his adversary in the underlying litigation for which Christopher Chamberlin engaged HBH.  Defendants now move to dismiss most of Christopher Chamberlin's claims and to strike portions of his complaint, and Christopher Chamberlin moves for partial summary judgment.

The Court finds the matter suitable for resolution without oral argument and VACATES the hearing previously set for 9:30 AM on May 15, 2020.  The case management conference previously set for the same time is CONTINUED to 2:00 PM PDT on May 15, 2020.  The parties will receive separate instructions to appear telephonically at the case management conference.

For the reasons discussed below, Defendants' motion is GRANTED, and all of Christopher Chamberlin's claims—except for his claim for negligent malpractice against Defendants HBH,

United States District Court
Northern District of California

1    Baer, and Hartog—are DISMISSED with leave to amend.  The motion for partial summary

2    judgment is DENIED.

3           If Christopher Chamberlin wishes to pursue the claims dismissed by this order and believes

4    that he can cure the defects identified herein, he may file an amended complaint no later than June

5    5, 2020.  If Christopher Chamberlin does not file an amended complaint by that date, Defendants'

6    answer to the remaining claim of the present complaint will be due no later than June 19, 2020.[1]

7    **II.    BACKGROUND**

8           **A.    Allegations of the Complaint**

9           Because a plaintiff's factual allegations are generally taken as true in resolving a motion to

10   dismiss under Rule 12(b)(6), this section summaries Christopher Chamberlin's allegations as if

11   true.  Christopher Chamberlin's allegations are *not* taken as true, however, for the purpose of his

12   motion for partial summary judgment, and nothing in this order should be construed as resolving

13   any issue of fact that might be disputed.

14          Christopher Chamberlin's mother Sylvia Jane Levin Chamberlin ("Jane Chamberlin") died

15   on June 21, 2015.  *See* Compl. (dkt. 1) ¶ 28.  Christopher Chamberlin's uncle, Michael Levin,

16   served as executor of Jane Chamberlin's estate, having been so designated in a will that she

17   signed.  *See id.* ¶ 26.  Michael Levin was a friend of Jane Chamberlin's live-in companion Donald

18   Partier, and Christopher Chamberlin contends that Michael Levin initially arranged for a below-

19   value sale of Jane Chamberlin's houseboat in a manner that would have benefited Partier at the

20   expense of the estate.  When the intended buyer for that deal backed out, Michael Levin allegedly

21   arranged to publicly sell the houseboat for below its value in a manner that would benefit other

22   indirect associates of the executor, including a colleague of his wife and a friend of his lawyer.  *Id.*

23   ¶¶ 26, 31–44.

24          Christopher Chamberlin hired a lawyer to contest the sale of the houseboat, and on May

25   11, 2016, petitioned to remove Michael Levin as executor.  *Id.* ¶¶ 51, 95–97.  In July of 2016,

26   Christopher Chamberlin decided to retain new counsel, and emailed Defendant David Baer, a

27

28   [1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all
     purposes pursuant to 28 U.S.C. § 636(c).

*United States District Court*
*Northern District of California*

1    principal of Defendant HBH, to state his desire to retain Baer as counsel "[i]f there is no conflict

2    in the matter." *Id.* ¶¶ 98–100.  Christopher Chamberlin relied on HBH to conduct a conflicts

3    check, and "was assured that there were no conflicts of interest." *Id.* ¶¶ 101–02.  Christopher

4    Chamberlin mentioned to Baer that Jane Chamberlin and Michael Levin were first cousins to

5    former U.S. Senator Carl Levin and then-U.S. Representative Sander Levin, and Christopher

6    Chamberlin's wife sent Baer documents identifying Michael Levin as the executor and

7    Christopher Chamberlin's adversary. *Id.* ¶¶ 107, 111–12.  Christopher Chamberlin retained HBH

8    and wired a $25,000 retainer to it on July 28, 2016, Baer appeared at a hearing along with

9    Christopher Chamberlin's existing attorney on July 29, 2016, and Baer received the file from her

10   to take over the case on August 3, 2016.  *Id.* ¶¶ 118–19, 126–27.

11           The judge in the probate matter, the Honorable Roy Chernus of the California Superior

12   Court for Marin County, denied Christopher Chamberlin's petition to remove Michael Levin as

13   executor, sustained a demurrer by Michael Levin, threatened sua sponte to sanction Christopher

14   Chamberlin if he persisted in challenging an appraisal of the houseboat, and eventually "dismissed

15   the case without an evidentiary ruling or statement of decision." *Id.* ¶¶ 142–43, 180.  Christopher

16   Chamberlin asserts or implies a number of purported deficiencies in Defendants' representation of

17   him, including, as some examples: failing to obtain the full court file for the probate matter, *id.*

18   ¶ 128, not propounding discovery until March 13, 2017 and never actually obtaining discovery

19   from Michael Levin, *id.* ¶¶ 132–34, assigning Julie Woods, a less experienced attorney, to handle

20   the case and argue motions rather than David Baer, *id.* ¶¶ 136, 138, advising Christopher

21   Chamberlin that he need not appear at hearings where other interested parties appeared, and failing

22   to obtain transcripts, *id.* ¶¶ 137, 139–40, failing to request written statements of the Superior

23   Court's decisions, *id.* ¶¶ 145, 183, filing an erroneous settlement statement indicating that

24   Christopher Chamberlin waived his right to appeal when he had in fact specifically requested that

25   Baer appeal the decision at issue, *id.* ¶¶ 146–47, refusing to seek Judge Chernus's recusal for

26   bias,[2] *id.* ¶ 152, failing to confirm whether payments were made from the houseboat sale proceeds

27

28   _____
     [2] Christopher Chamberlin does not specifically identify any basis for bias, but separately notes that
     Judge Chernus greeted Michael Levin as "a fellow New Jersey Attorney" at a hearing, Compl.

United States District Court
Northern District of California

1    to an indirect associate of Michael Levin, *id.* ¶¶ 168–70, failing to respond to a declaration by

2    Partier that included "grossly false allegations about [Christopher Chamberlin] and his wife,"

3    which eventually led to appellate proceedings requiring defense, *id.* ¶¶ 175–79, failing to appeal

4    certain substantive rulings by the trial court, as noted by the state appellate court, *id.* ¶¶ 266–67,

5    and assessing the wrong deadline to appeal the denial of the petition to remove Michael Levin as

6    executor, resulting in appeal being dismissed as untimely and Christopher Chamberlin being

7    ordered to pay Michael Levin's costs on appeal, *id.* ¶¶ 157–66, 195–202.  Christopher Chamberlin

8    alleges that, "[a]s a California 'Trusts and Estates Law' expert, Baer had to have known" the

9    correct deadline as set by statute.  *Id.* ¶ 203.

10         Michael Levin is a first cousin of Daniel Levin, and has a "sibling-like" relationship with

11   him.[3]  *Id.* ¶ 62.  Christopher Chamberlin learned in March of 2018 that Daniel Levin's wife,

12   Ambassador Fay Levin, is Defendant John Hartog's sister (and because Hartog is married to

13   Defendant Margaret Hand, Fay Levin is Hand's sister-in-law).  *Id.* ¶¶ 220–21.  No one responded

14   when Christopher Chamberlin and his wife attempted to raise that connection with Defendants.

15   *Id.* ¶¶ 222–24.  Hartog and Hand "were compelled to disclose their political contributions in 2009

16   due to John Hartog's sister's, Fay Levin's, appointment as Ambassador to the Hague."  *Id.* ¶ 236.

17   Christopher Chamberlin also alleges that Michael Levin sought legal advice from an attorney with

18   whom Hartog co-authored a practice guide, the late George Dirkes, and that Christopher

19   Chamberlin believes Hartog referred Michael Levin to Dirkes.  *Id.* ¶¶ 228–30.

20         According to Christopher Chamberlin, Defendants filed a meritless petition for review by

21   the California Supreme Court, despite the missed appellate deadline being a settled issue of

22   statutory law, in order "to provide HBH with 'plausible deniability' for having mishandled the

23   case to protect Mike Levin and the Levin name personally."  *Id.* ¶¶ 204–05.  Christopher

24   Chamberlin alleges that "HBH would protect the Levin name," *id.* ¶ 240, that "[e]very legal

25

26   ¶ 141, and that he later referred to Jane Chamberlin's estate as a "rat hole," *id.* ¶ 182.
     [3] The complaint also notes a number of other Levin relations, including some in various positions
27   of government, but does not allege that those individuals have more than tangential relevance to
     the present case.  *See, e.g.*, Compl. ¶¶ 63, 70–71, 86, 89–90, 92–93, 234–47.  Christopher
28   Chamberlin alleges that he and his mother Jane Chamberlin did not have a close relationship with
     most of their relatives in the Levin family.  *See id.* ¶¶ 73–82.

4

1    decision that Baer/HBH made in the estate case resulted in favorable outcomes for Mike Levin,

2    HBH's actual, but concealed, client," *id.* ¶ 253, and that HBH did not serve Christopher Cardinal's

3    interests, *id.* ¶ 254.  Christopher Chamberlin would not have hired HBH if he "had known that

4    Baer's partners were Daniel Levin's brother[-in-law] and sister-in-law."  *Id.* ¶ 252.

5         Christopher Chamberlin asserts a claim for declaratory judgment establishing that his

6    retainer agreement with HBH "is void against public policy because it created an undisclosed,

7    unwaivable, and irreconcilable conflict of interested between Plaintiff and HBH, and Mike Levin

8    (HBH's real client in interest), and his Levin family, including John Hartog's sister, Fay Levin,

9    and her husband, Daniel Levin."  *Id.* ¶ 295.  He seeks a declaration that he is entitled to recover

10   the $17,286.34 that he has paid to HBH.  *Id.* ¶ 300.

11        Christopher Chamberlin's second claim is for fraudulent inducement, on the grounds that

12   that "John Hartog and Margaret Hand would have immediately recognized the name LEVIN" and

13   that name "would be immediately identified by an internal conflict check," and that "[b]y failing

14   to reveal their relationship to Daniel Levin and Ambassador Fay Levin . . . Defendants

15   fraudulently induced Plaintiff to retain HBH to represent him."  *Id.* ¶¶ 302–39.

16        Christopher Chamberlin's third and fourth claims are for breach of fiduciary duty and

17   breach of the duty of loyalty, based on his contention that Defendants placed Michael Levin's

18   interests over his own, in violation of Defendants' duties as attorneys.  *Id.* ¶¶ 340–74.

19        Christopher Chamberlin's fifth and sixth claims are for "international legal malpractice"

20   and "negligent legal malpractice," asserting particular errors in Defendants' representation of him

21   in addition to the purported undisclosed conflict of interest.  *Id.* ¶¶ 375–413.

22        Christopher Chamberlin asserts that this Court has subject matter jurisdiction over his

23   claims, all of which are asserted under California law, based on diversity jurisdiction under 28

24   U.S.C. § 1332 because no defendant is a citizen of the same state as Christopher Chamberlin (New

25   Jersey) and the amount in controversy exceeds $75,000.  *Id.* ¶¶ 2–6.

26        **B.    Motion to Dismiss and Strike**

27        Defendants move to dismiss Christopher Chamberlin's claim for fraudulent inducement

28

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1   under Rule 12(b)(6)[4] of the Federal Rules of Civil Procedure because his complaint fails to allege

2   with particularity the circumstances of the assurance he allegedly received that there were no

3   conflicts of interest, and because he has not alleged that any defendant actually knew that Michael

4   Levin was a cousin of Daniel Levin (the brother-in-law of Defendant Hartog) or that any

5   defendant intentionally concealed that fact for the purpose of inducing Christopher Chamberlin to

6   enter a retainer agreement with HBH.  Mot. to Dismiss & Strike (dkts. 10, 11) at 7–8.  Christopher

7   Chamberlin argues that he "alleges facts to plausibly show HBH's knowledge of the alleged

8   concealed personal conflict in the Levin v. Chamberlin Estate case," including that he mentioned

9   to Baer that Jane Chamberlin and Michael Levin were related to the Levins who formerly served

10  in Congress, as well as a number of allegations regarding Christopher Chamberlin's own

11  subsequent discovery of the relationship (that do not necessarily relate to Defendants' knowledge,

12  but are perhaps offered to show that Defendants could have discovered the relationship through

13  the same public records).  Opp'n to Mot. to Dismiss (dkt. 28)[5] at 19–21.  In their reply, Defendants

14  contend that Christopher Chamberlin's arguments do not change the fact that he has not alleged

15  actual knowledge or intent to defraud by any defendant.  Reply re Mot. to Dismiss (dkt. 25) at 2–

16  4.

17          Defendants move to dismiss Christopher Chamberlin's claims for breach of fiduciary duty

18  and breach of the duty of loyalty on the grounds that they too sound in fraud and must be alleged

---

[4] Portions of Defendants' motion suggest that the motion is asserted under Rule 9(b) of the Federal
Rules of Civil Procedure.  In this Court's view, while Rule 9(b) sets the relevant pleading standard
for claims sounding in fraud, a motion challenging whether a plaintiff's allegations meet that
standard is best viewed as brought under Rule 12(b)(6), just as a motion arguing that a plaintiff
has not alleged sufficient facts to support any other claim is brought under Rule 12(b)(6) rather
than under Rule 8(a), which sets the pleading standard for non-fraud claims.  The Ninth Circuit
has described a "motion to dismiss a complaint or claim 'grounded in fraud' under Rule 9(b) for
failure to plead with particularity" as "the functional equivalent of a motion to dismiss under Rule
12(b)(6) for failure to state a claim."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th
Cir. 2003).  This procedural distinction has no bearing, however, on the substance of Defendants'
arguments or the outcome of the motion.
[5] Due to the COVID-19 public health emergency, certain of Christopher Chamberlin's filings were
not filed in the record until some time after he submitted them, but there is no dispute that
Christopher Chamberlin timely served his filings on Defendants, and no party has argued that any
delay in filing is relevant to the outcome of the present motions.  All such delay is excused with
respect to the filings referenced in this order.  The Court expects that Christopher Chamberlin's
recent receipt of permission to file documents electronically will prevent any delays in filing going
forward.

1    with particularity under Rule 9(b), and that Christopher Chamberlin has not alleged that any

2    defendant breached a duty to him for the same reasons as stated in Defendants' arguments

3    regarding his claim for fraudulent inducement.  Mot. to Dismiss & Strike at 8.  Christopher

4    Chamberlin contends that his allegations that Defendants placed Michael Levin's interests over his

5    own are sufficient to support these claims.  Opp'n to Mot. to Dismiss at 21–26.[6]

6         Defendants move to dismiss Christopher Chamberlin's declaratory judgment claim as

7    redundant to his claim for breach of fiduciary duty (because the remedy he seeks—disgorgement

8    of fees paid—would be available on a claim for breach), and because Defendants would not be

9    required to disclose their attenuated relationship with Michael Levin under Rule 1.7 of the current

10   California Rules of Professional Conduct.  Mot. to Dismiss & Strike at 9–11.  Christopher

11   Chamberlin argues that declaratory judgment can be a standalone claim under California law and

12   that a declaration of whether the retainer agreement is valid would resolve an actual conflict

13   between the parties, both as to the fees that Christopher Chamberlin already paid and as to the

14   $75,633.97 that HBH seeks from Christopher Chamberlin in its counterclaim.  Opp'n to Mot. to

15   Dismiss (dkt. 28) at 16–17.  Christopher Chamberlin contends that his relationship with

16   Defendants was governed by California's previous rules of professional conduct, not the rule cited

17   in Defendants' motion, violations of which the California Supreme Court has recognized as

18   grounds for invalidating attorney representation agreements.  *Id.* at 17–18 (citing, *e.g.*, *Sheppard,*

19   *Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.*, 6 Cal. 5th 59 (2018)).  Without acknowledging

20   their error in relying on a rule not enacted until after the conduct at issue, Defendants respond that

21   the former rules applicable at that time similarly would not require disclosure of the indirect

22   relationship at issue.  Reply re Mot. to Dismiss at 5–7.

23        Defendants move to dismiss Christopher Chamberlin's claim for "intentional legal

24   malpractice" under Rule 12(b)(6) and to strike it under Rule 12(f) because California law does not

25   recognize such a claim as distinct from legal malpractice generally, which is based on negligence.

26

27

28

---

[6] While the page numbering of Christopher Chamberlin's opposition brief runs to 33, nine of those pages consist of a cover page, table of contents, and table of authorities, which do not count against the twenty-five page limit set by Civil Local Rule 7-4(b).

Mot. to Dismiss & Strike at 11–12.  Defendants also move to dismiss the negligent malpractice

claim against Defendant Margaret Hand, because Christopher Chamberlin has not alleged that she

had any role in representing him, and to strike the claim for punitive damages for negligent

malpractice because Christopher Chamberlin has not sufficiently alleged "oppression, fraud, or

malice."  *Id.* at 11–13.  Christopher Chamberlin argues that California decisions recognize

separate claims for intentional and negligent malpractice, and that his allegations that Defendants

made a number of poor decisions representing him in service of their hidden loyalty to Michael

Levin are sufficient to establish both intentional and negligent malpractice.  Opp'n to Mot. to

Dismiss at 26–29.  Christopher Chamberlin contends that his allegations that "HBH was in

charge" of the case during periods when Baer was unavailable, Compl. ¶ 321, is sufficient to

support a malpractice claim against Hand, and suggests that Hand might have supervised Julie

Woods, the attorney who handled much of the case.  Opp'n to Mot. to Dismiss at 29–30.

Christopher Chamberlin argues that his allegations are sufficient to support a prayer for punitive

damages, and requests leave to amend if the Court dismisses any of his claims.  *Id.* at 30–32.

### C.    Motion for Partial Summary Judgment

Christopher Chamberlin moves for partial summary judgment on his claim for declaratory

judgment that the retainer agreement is invalid based on the purported conflict of interest caused

by Michael Levin's attenuated relationship to Hartog and Hand.  *See generally* Mot. for Partial

Summary Judgment (dkt. 30).  Defendants oppose that motion, offering declarations by Baer,

Hartog, and Hand each denying knowledge of that relationship before Christopher Chamberlin's

wife brought it to Baer's attention in March of 2018.  *See generally* Opp'n to Summary Judgment

(dkt. 24).

### III.    ANALYSIS

### A.    Motion to Dismiss and Strike

#### 1.    Legal Standard for Motions to Dismiss Under Rule 12(b)(6)

A complaint may be dismissed for failure to state a claim on which relief can be granted

under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  "The purpose of a motion to dismiss

under Rule 12(b)(6) is to test the legal sufficiency of the complaint."  *N. Star Int'l v. Ariz. Corp.*

United States District Court
Northern District of California

8

1    *Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  Generally, a claimant's burden at the pleading stage

2    is relatively light.  Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which

3    sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing

4    that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).

5         In ruling on a motion to dismiss under Rule 12(b)(6), the court takes "all allegations of

6    material fact as true and construe[s] them in the light most favorable to the non-moving party."

7    *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  Dismissal may be based on a

8    lack of a cognizable legal theory or on the absence of facts that would support a valid theory.

9    *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A pleading must "contain

10   either direct or inferential allegations respecting all the material elements necessary to sustain

11   recovery under some viable legal theory."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007)

12   (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).  "A pleading

13   that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action

14   will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

15   "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"

16   *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Nor does a

17   complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"

18   *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Rather, the claim must be "'plausible

19   on its face,'" meaning that the claimant must plead sufficient factual allegations to "allow the

20   court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

21   (quoting *Twombly*, 550 U.S. at 570).

22        Rule 9(b) of the Federal Rules of Civil Procedure sets a heightened pleading standard for

23   claims based on fraud.  "In alleging fraud or mistake, a party must state with particularity the

24   circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  The Ninth Circuit has held

25   that in order to meet this standard, a "complaint must specify such facts as the times, dates, places,

26   benefits received, and other details of the alleged fraudulent activity," *Neubronner v. Milken*, 6

27   F.3d 666, 672 (9th Cir. 1993), or in other words, "'the who, what, when, where, and how' of the

28   misconduct charged," *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation

*United States District Court*
*Northern District of California*

omitted).  "Rule 9(b) demands that the circumstances constituting the alleged fraud 'be specific

enough to give defendants notice of the particular misconduct . . . so that they can defend against

the charge and not just deny that they have done anything wrong.'"  *Kearns*, 567 F.3d at 1124

(quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)) (ellipsis in original).

Where the complaint has been filed by a pro se plaintiff, as is the case here, courts must

"construe the pleadings liberally . . . to afford the petitioner the benefit of any doubt."  *Hebbe v.

Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  "A district court should not dismiss a

pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the

complaint could not be cured by amendment.'"  *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir.

2012) (quoting *Schucker v. Rockwood*, 846 F.2d 1202, 1203−04 (9th Cir. 1988) (per curiam)).

When it dismisses the complaint of a pro se litigant with leave to amend, "'the district court must

provide the litigant with notice of the deficiencies in his complaint in order to ensure that the

litigant uses the opportunity to amend effectively.'"  *Id.* (quoting *Ferdik v. Bonzelet*, 963 F.2d

1258, 1261 (9th Cir. 1992)).

### 2.      Legal Standard for Motions to Strike Under Rule 12(f)

A party may move the court to "strike from a pleading an insufficient defense or any

redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "The function of

a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from

litigating spurious issues by dispensing with those issues prior to trial . . . ."  *Whittlestone, Inc. v.

Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (citation omitted).  "Motions to strike are

generally regarded with disfavor because of the limited importance of pleading in federal practice,

and because they are often used as a delaying tactic."  *Mag Instrument, Inc. v. JS Prods., Inc.*, 595

F. Supp. 2d 1102, 1106 (C.D. Cal. 2008).  "Ultimately, whether to grant a motion to strike lies

within the sound discretion of the district court."  *Nguyen v. CTS Elecs. Mfg. Sols. Inc.*, No. 13-

CV-03679-LHK, 2014 WL 46553, at *3 (N.D. Cal. Jan. 6, 2014) (citing *Whittlestone*, 618 F.3d at

973).

### 3.      Fraudulent Inducement

The parties agree that California law requires the following elements for a claim for

1    fraudulent inducement based on concealment:

2    >    (1) the defendant must have concealed or suppressed a material fact,
3    >    (2) the defendant must have been under a duty to disclose the fact to
     >    the plaintiff, (3) the defendant must have intentionally concealed or
     >    suppressed the fact with the intent to defraud the plaintiff, (4) the
4    >    plaintiff must have been unaware of the fact and would not have acted
     >    as he did if he had known of the concealed or suppressed fact, and
5    >    (5) as a result of the concealment or suppression of the fact, the
     >    plaintiff must have sustained damage.
6

7    *Kaldenbach v. Mut. of Omaha Life Ins. Co.*, 178 Cal. App. 4th 830, 850 (2009); *Blickman Turkus,*

8    *LP v. MF Downtown Sunnyvale, LLC*, 162 Cal. App. 4th 858, 868 (2008) (same); Mot. to Dismiss

9    & Strike at 6–7 (quoting *Blickman*); Opp'n to Mot. to Dismiss at 19 (quoting *Kaldenbach*).

10           A defendant cannot "conceal[] or suppress[]" a fact the defendant does not know, much

11   less "intentionally conceal[] or suppress[] the fact with the intent to defraud the plaintiff." *See*

12   *Kaldenbach*, 178 Cal. App. 4th at 850.  While Rule 9(b) provides that "[m]alice, intent,

13   knowledge, and other conditions of a person's mind may be alleged generally" in asserting a claim

14   for fraud, Fed. R. Civ. P. 9(b), "'generally' is a relative term," and such allegations must still meet

15   the plausibility standard applicable to pleading a claim that falls outside of Rule 9(b)'s heightened

16   standard of particularity.  *Iqbal*, 556 U.S. at 686–87.  Assertions of knowledge and intent must be

17   supported by sufficient factual allegations to render them plausible—at the very least, knowledge

18   and intent must be alleged at all.

19           Defendants are correct that Christopher Chamberlin has not alleged that any defendant

20   actually knew that Michael Levin was Hartog's sister's husband's cousin.  Christopher

21   Chamberlin presents facts that he believes support an inference of such knowledge by some or all

22   Defendants, but without an actual allegation of knowledge, his complaint does not provide

23   sufficient notice of his theory of this claim.  Among other questions, it is not clear: (1) whether

24   Christopher Chamberlin believes any defendant actually had such knowledge or whether he relies

25   only on a theory of constructive knowledge or what Defendants' *should* have known; (2) whether

26   Christopher Chamberlin believes that all Defendants knew of the relationship or that only some of

27   them did; and (3) whether Christopher Chamberlin believes that Defendants knew of the

28   relationship at the time that the parties entered the retainer agreement, or only learned of it at some

United States District Court
Northern District of California

11

United States District Court
Northern District of California

1    point thereafter.  The Court is not yet in a position to determine whether some or all of those

2    possibilities could support a claim for fraudulent inducement, because without more clarity in the

3    complaint, the parties have not been able to focus their arguments to address the questions of law

4    implicated by whatever theory Christopher Chamberlin actually intends to assert.  Moreover, to

5    the extent that the current complaint alleges specific *intent* to induce Christopher Chamberlin to

6    enter an agreement based on the concealed facts—which is not entirely clear—such allegations do

7    not rise to the standard of plausibility without allegations that any defendant actually knew those

8    facts.

9          To the extent that Christopher Chamberlin's claim is based on his allegation that he "was

10   assured that there were no conflicts of interest," Compl. ¶ 102, he has not provided the type of

11   particularized allegations—"'the who, what, when, where, and how' of the misconduct

12   charged"—necessary to state a claim for fraud under Rule 9(b).  *See Kearns*, 567 F.3d at 1124.  To

13   base a claim on that assurance, Christopher Chamberlin must at least identify who provided the

14   assurance.

15         While the lack of allegations of knowledge and intent, and the lack of specificity regarding

16   the alleged assurance of no conflicts, are themselves sufficient grounds to dismiss this claim, the

17   Court also addresses the issue of duty, to ensure that Christopher Chamberlin has an opportunity

18   to amend his claim effectively.  Christopher Chamberlin appears to rely on a purported duty of

19   disclosure imposed by the California Rules of Professional Conduct in effect from 1992 to 2018.

20   Rule 3-310(B)(1) of those rules provided that a member of the California Bar "shall not accept or

21   continue representation of a client without providing written disclosure to the client where . . .

22   [t]he member has a legal, business, financial, professional, or personal relationship with a party or

23   witness in the same matter."  Without more, the Court is not persuaded that—focusing here on

24   Hartog, who has the least attenuated potential relationship of any defendant to Michael Levin—an

25   attorney's sister's husband's cousin is the sort of "personal relationship" contemplated by the rule.

26   Nor has Christopher Chamberlin provided sufficient allegations to implicate Rule 3-310(B)(3),

27   requiring written consent for representation where "[t]he member has or had a legal, business,

28   financial, professional, or personal relationship with another person or entity the member knows or

reasonably should know would be affected substantially by resolution of the matter," because as

discussed above, there is no allegation that any defendant actually knew that Michael Levin was

Hartog's wife's husband's cousin, much less that any defendant knew or should have known that

anyone in that chain of connection (such as Hartog's sister Fay Levin, who features prominently in

Christopher Chamberlin's complaint and arguments) "would be affected substantially" by Michael

Levin being removed as executor from Jane Chamberlin's estate.[7]  If Christopher Chamberlin

amends his complaint to reassert a claim for fraudulent inducement based on concealment, he

must include sufficient factual allegations to support a duty to disclose.

Accordingly, Christopher Chamberlin's claim for fraudulent inducement is DISMISSED

with leave to amend.

### 4.      Breach of Fiduciary Duty and Duty of Loyalty

Defendants move to dismiss Christopher Chamberlin's claims for breach of the duty of

loyalty and breach of fiduciary duty for essentially the same reasons as his claim for fraudulent

inducement.  Christopher Chamberlin does not dispute that both of these claims are based on the

purported conflict of interest presented by Defendants' purported loyalty to Michael Levin.  *See*

Opp'n to Mot. to Dismiss at 21–26.  Absent—at the very least—any allegation that any defendant

actually knew at any relevant time that Michael Levin was Hartog's sister's husband's cousin, the

assertion that Defendants favored his interests over Christopher Chamberlin's is not plausible.

These claims are therefore DISMISSED with leave to amend.

### 5.      Malpractice

"In a legal malpractice action arising from a civil proceeding, the elements are (1) the duty

of the attorney to use such skill, prudence, and diligence as members of his or her profession

commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection

between the breach and the resulting injury; and (4) actual loss or damage resulting from the

---

[7] Christopher Chamberlin's assertions that Defendants' "true client" was Michael Levin could perhaps implicate former Rule 3-310(C), implicating simultaneous representation of clients with conflicting interests.  But those assertions are wholly conclusory, and it is not clear whether Christopher Chamberlin is alleging that Defendants in fact entered an agreement to represent Michael Levin, or if he is simply using hyperbole to state his belief that Defendants were more concerned with the Levin family than with Christopher Chamberlin's interests.

1    attorney's negligence."  *Coscia v. McKenna & Cuneo*, 25 Cal. 4th 1194, 1199 (2001).

2         Defendants seek to dismiss or strike Christopher Chamberlin's claims for "intentional"

3    malpractice on the basis that California does not recognize such a claim as a cause of action

4    distinct from regular professional malpractice, which is based on negligence.  Christopher

5    Chamberlin cites cases recognizing that professional malpractice, while *requiring* only negligence,

6    may be based on intentional misconduct, which may provide for additional remedies in certain

7    circumstances.  *See, e.g.*, *AMCO Ins. Co. v. All Sols. Ins. Agency*, LLC, 244 Cal. App. 4th 883,

8    890, 198 Cal. Rptr. 3d 687, 692 (2016) ("California recognizes the general rule that an agent or

9    broker who intentionally or negligently fails to procure insurance as requested by a client—either

10   an insured or an applicant for insurance—will be liable to the client in tort for the resulting

11   damages."); *Smith v. Superior Court*, 10 Cal. App. 4th 1033, 1040 (1992) ("Also, where a plaintiff

12   sufficiently alleges intentional or affirmative misconduct by an attorney or noneconomic injury

13   resulting from an attorney's professional negligence, recovery of emotional distress damages is

14   permitted.").

15        Whether California courts consider malpractice based on intentional misconduct to be a

16   distinct claim from professional negligence implicates the sort of formalism eschewed by the

17   federal pleading standard.  "Federal pleading rules call for 'a short and plain statement of the

18   claim showing that the pleader is entitled to relief,' Fed. Rule Civ. Proc. 8(a)(2); they do not

19   countenance dismissal of a complaint for imperfect statement of the legal theory supporting the

20   claim asserted."  *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam) (reversing

21   dismissal of a constitutional claim for failure to cite specifically 42 U.S.C. § 1983).  Here, given

22   that Christopher Chamberlin's claim for intentional malpractice rests on a distinct theory—

23   Defendants' purported loyalty to Michael Levin based on his attenuated relationship to Hartog and

24   Hand—from the more straightforward theory of error that might support a claim for malpractice

25   based on negligence, and because punitive damages might be available for intentional malpractice

26   that would not be available for negligence, the assertion of a separate claim for "intentional legal

27   malpractice" tends to help organize, rather than complicate, the different theories asserted in the

28   complaint.  The Court declines to strike or dismiss that claim solely on the basis that it is

United States District Court
Northern District of California

United States District Court
Northern District of California

1  redundant.  However, because the "intentional" malpractice claim relies on knowledge and intent

2  that—as discussed above in the context of fraudulent inducement—Christopher Chamberlin has

3  not sufficiently alleged, it is DISMISSED with leave to amend.

4          Defendants move to dismiss the negligent misrepresentation claim against Hand because

5  Christopher Chamberlin has not alleged that Hand played any role in representing him.  Neither

6  Christopher Chamberlin's allegation that "HBH" oversaw the matter in which it represented him

7  when Baer was unavailable, nor the suggestion in his opposition brief that Hand might have

8  supervised Julie Woods in the latter's representation of Christopher Chamberlin, is a substitute for

9  factual allegations in the complaint that Hand *herself* represented Christopher Chamberlin and

10  acted in a manner that fell short of her professional obligations, to Chamberlin's detriment.  The

11  negligent malpractice claim against Hand is therefore DISMISSED with leave to amend.

12  Defendants have not moved to dismiss Christopher Chamberlin's negligent malpractice claims

13  against Baer, Hartog, and HBH; this claim may proceed against those defendants.

### 6.     Declaratory Judgment

15          Christopher Chamberlin's claim for declaratory judgment seeks a declaration that his

16  retainer agreement with Defendants is invalid based on Defendants' purported undisclosed conflict

17  of interest arising from Hartog's indirect relationship with Michael Levin.  Christopher

18  Chamberlin has not asserted any other reason for declaring the agreement invalid or

19  unenforceable.  Because, as discussed above, Christopher Chamberlin has not sufficiently alleged

20  that any defendant knew of that relationship, or that the relationship implicated Defendants' duties

21  under the then-applicable California Rules of Professional Conduct, this claim is DISMISSED

22  with leave to amend.  The Court does not reach Defendants' other arguments with respect to this

23  claim.

### 7.     Punitive Damages

25          Christopher Chamberlin seeks punitive damages on all of his claims.  Defendants move to

26  strike the request for such damages in Christopher Chamberlin's claim for negligent malpractice.

27  "Under California law, a plaintiff may recover punitive damages in connection with a non-

28  contractual claim if she establishes by clear and convincing evidence that the defendant is guilty of

15

United States District Court
Northern District of California

1    (1) fraud, (2) oppression, or (3) malice." *Doe v. Uber Techs., Inc.*, No. 19-cv-03310-JSC, 2019

2    WL 6251189, at *8 (N.D. Cal. Nov. 22, 2019) (citing Cal. Civ. Code § 3294(a)).  Courts disagree

3    as to the appropriate vehicle for challenging an improper request for punitive damages.  *Compare*

4    *Jackson v. McMahon*, No. EDCV 19-0548 SVW (PVC), 2020 WL 2200447, at *6 (C.D. Cal. Mar.

5    11, 2020) (holding that "a Rule 12(b)(6) motion to dismiss for failure to state a claim is not the

6    proper vehicle for striking a prayer for relief" and construing the motion as brought under Rule

7    12(f)), *with Bass v. Cty. of San Bernardino*, No. 5:19-cv-00231-MWF-KES, 2020 WL 1678218, at

8    *10 (C.D. Cal. Jan. 23, 2020) (holding in light of *Whittlestone*, 618 F.3d 970, "that Rule 12(f) is

9    not the right procedural vehicle for challenging Plaintiff's prayer for punitive damages" and

10   construing the motion as brought under Rule 12(b)(6)), *report and recommendation adopted*, 2020

11   WL 1674258 (C.D. Cal. Apr. 6, 2020).  Regardless of which rule applies, however, Christopher

12   Chamberlin cannot recover punitive damages based solely on negligence.  Because his only

13   remaining claim is for negligent malpractice, Defendants' motion is GRANTED with respect to

14   the prayer for punitive damages, which is stricken and/or dismissed.  This order is without

15   prejudice to Christopher Chamberlin seeking such damages if he amends his complaint to assert a

16   sufficient claim based on intentional conduct involving malice, oppression, or fraud.

17          **B.     Motion for Partial Summary Judgment**

18                 **1.     Legal Standard**

19          Summary judgment on a claim or defense is appropriate "if the movant shows that there is

20   no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

21   law."  Fed. R. Civ. P. 56(a).  In order to prevail, a party moving for summary judgment must show

22   the absence of a genuine issue of material fact with respect to an essential element of the non-

23   moving party's claim, or to a defense on which the non-moving party will bear the burden of

24   persuasion at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

25          Once the movant has made this showing, the burden then shifts to the party opposing

26   summary judgment to designate "'specific facts showing there is a genuine issue for trial.'"  *Id.*

27   (citation omitted); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely

28   disputed must support the assertion by . . . citing to particular parts of materials in the record

16

United States District Court
Northern District of California

1    . . . ."). The non-moving party has the burden of identifying, with reasonable particularity, the

2    evidence that precludes summary judgment. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

3    Thus, it is not the task of the court to scour the record in search of a genuine issue of triable fact.

4    *Id.*; *see Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); Fed. R. Civ. P.

5    56(c)(3).

6         "[T]he inquiry involved in a ruling on a motion for summary judgment . . . implicates the

7    substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson v.*

8    *Liberty Lobby Inc.*, 477 U.S. 242, 252 (1986).  A party need not present evidence to support or

9    oppose a motion for summary judgment in a *form* that would be admissible at trial, but the

10   *contents* of the parties' evidence must be amenable to presentation in an admissible form. *See*

11   *Fraser v. Goodale*, 342 F.3d 1032, 1036−37 (9th Cir. 2003).  Neither conclusory, speculative

12   testimony in affidavits nor arguments in moving papers are sufficient to raise genuine issues of

13   fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738

14   (9th Cir. 1979).  On summary judgment, the court draws all reasonable factual inferences in favor

15   of the non-movant, *Scott v. Harris*, 550 U.S. 372, 378 (2007), but where a rational trier of fact

16   could not find for the non-moving party based on the record as a whole, there is no "genuine issue

17   for trial" and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475

18   U.S. 574, 587 (1986).

19        **2.      Christopher Chamberlin Is Not Entitled to Partial Summary Judgment**

20        Christopher Chamberlin seeks partial summary judgment only on his claim for declaratory

21   judgment, based on the purported conflict of interest presented by Hartog's sister being married to

22   the cousin of an adverse party.  As discussed above, the Court dismisses that claim with leave to

23   amend under Rule 12(b)(6), because Christopher Chamberlin has not sufficiently alleged either

24   that any defendant actually knew of that attenuated relationship or that Defendants' representation

25   of him despite the relationship violated any applicable rule of professional conduct.  Christopher

26   Chamberlin cannot obtain judgment on a claim that has been dismissed.  The motion for partial

27   summary judgment is therefore DENIED.

28        The Court notes that even if Christopher Chamberlin can amend his complaint to assert a

17

United States District Court
Northern District of California

1    sufficient claim, motions for summary judgment are rarely fruitful before at least some discovery

2    has been conducted, and this case does not appear to be an exception to that general rule.

3    Christopher Chamberlin relies on his verified complaint, declarations by himself and his wife, and

4    several news media articles submitted for judicial notice.  None of those materials are competent

5    evidence to show Defendants' knowledge.  While Christopher Chamberlin need not provide

6    evidence to support summary judgment in a form admissible at trial, declarations from witnesses

7    without personal knowledge of the facts stated therein are not sufficient, and neither Christopher

8    Chamberlin nor his wife have personal knowledge of what Defendants knew, if anything, about

9    Michael Levin's relationship with Hartog and Hand.  *Thornhill Pub. Co. v. Gen. Tel. & Elecs.*

10   *Corp.*, 594 F.2d 730, 738 (9th Cir. 1979) (rejecting an affidavit that "failed to set forth any

11   specific facts within his personal knowledge in support of [the assertion at issue]").  Moreover,

12   even if Christopher Chamberlin had submitted competent evidence that tended to show

13   knowledge, each individual defendant has submitted a declaration denying such knowledge.  In

14   considering a motion for summary judgment, the Court is required to resolve conflicting evidence

15   in favor of the non-moving party—in the case of a motion by Christopher Chamberlin, conflicts

16   would be resolved in favor of Defendants.  If Defendants did not, at the very least, know that

17   Michael Levin was Hartog's sister's husband's cousin, there would be no conflict of interest and

18   no basis to invalidate the retainer agreement.  Accordingly, even if the Court had not dismissed the

19   claim for declaratory judgment, it would deny the motion for partial summary judgment.

20   **IV.    CONCLUSION**

21         For the reasons discussed above, Defendants' motion to dismiss is GRANTED, and all of

22   Christopher Chamberlin's claims, except for negligent malpractice against Defendants HBH, Baer,

23   and Hartog, are DISMISSED with leave to amend.  Christopher Chamberlin may file an amended

24   complaint no later than June 5, 2020 if he wishes to pursue those claims and can cure the defects

25   identified in this order.

26         Christopher Chamberlin, who is representing himself, is encouraged to contact the Federal

27   Pro Bono Project's Pro Se Help Desk for assistance if he continues to pursue this case.  Lawyers at

28   the Help Desk can provide basic assistance to parties representing themselves but cannot provide

1    legal representation.  In-person appointments are not currently available due to the COVID-19

2    public health emergency, but Christopher Chamberlin may contact the Help Desk at 415-782-8982

3    or FedPro@sfbar.org to schedule a telephonic appointment.

4        **IT IS SO ORDERED.**

5    Dated: May 11, 2020

6

7                              JOSEPH C. SPERO

                                        Chief Magistrate Judge

United States District Court
Northern District of California

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28