UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER CHAMBERLIN,<br><br>    Plaintiff,<br><br>v.<br><br>HARTOG, BAER & HAND, APC, et al.,<br><br>    Defendants. | Case No. 19-cv-08243-JCS<br><br>**ORDER REGARDING MOTION TO DISMISS IN PART FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 47 |

## I.   INTRODUCTION

Plaintiff Christopher Chamberlin, pro se, brings this action against his former attorneys, Defendants Hartog, Baer & Hand, APC ("HBH") and its three named partners David Baer, John Hartog, and Margaret Hand, asserting claims for fraudulent inducement, breach of fiduciary duty and the duty of loyalty, malpractice, and declaratory judgment that his retainer agreement with HBH is void.  Most of Christopher Chamberlin's claims are based on his theory that Defendants failed to disclose a purported conflict of interest with respect to Michael Levin, who is Christopher Chamberlin's uncle, served as the executor of Christopher Chamberlin's mother Jane Chamberlin's estate, and was his adversary in the underlying probate litigation for which Christopher Chamberlin engaged HBH.  The Court previously granted Defendants' motion to dismiss those claims, as well as a claim for negligent legal malpractice against Hand, with leave to amend.  Christopher Chamberlin filed an amended complaint reasserting the dismissed claims, and Defendants move once again to dismiss.  The Court found the matter suitable for resolution without oral argument and vacated the hearing set for August 14, 2020.  For the reasons discussed below, Defendants' motion is GRANTED, and the claims at issue are DISMISSED WITH PREJUDICE.

Defendants have not moved to dismiss Christopher Chamberlin's negligent malpractice

claims against HBH, Baer, and Hartog, which may proceed. Defendants shall file their answer no later than September 15, 2020.[1]

## II. BACKGROUND

Because a plaintiff's factual allegations are generally taken as true in resolving a motion to dismiss under Rule 12(b)(6), this order summarizes Christopher Chamberlin's allegations as if true. Nothing in this order should be construed as resolving any issue of fact that might be disputed at a later stage of the case.

### A. Allegations of the Original Complaint

The Court's previous order includes a more detailed summary of the alleged facts of this case. *See* Order re Mot. to Dismiss, Mot. to Strike, & Mot. for Partial Summ. J. ("1st MTD Order," dkt. 44)[2] at 2–5. In brief, after Christopher Chamberlin's mother Jane Chamberlin died in 2015 and his uncle Michael Levin was named in her will as executor, Christopher Chamberlin sought to contest a sale of Jane Chamberlin's houseboat and remove Michael Levin as executor. Compl. (dkt. 1) ¶¶ 26, 28, 51, 95–97. In July of 2016, Christopher Chamberlin retained Defendant HBH as his counsel, and HBH attorneys Defendant Baer and non-party Julie Woods appeared on his behalf in state court probate proceedings. *See id.* ¶¶ 118, 126, 136, 138. Christopher Chamberlin alleged that Defendants made a number of errors in representing him that led, among other consequences, to Christopher Chamberlin being held liable for Michael Levin's costs on appeal. *See, e.g.*, *id.* ¶¶ 157–66, 195–202.

According to Christopher Chamberlin, those errors were not mere negligence, but stemmed from Defendants' desire to protect Michael Levin's family because—unbeknownst to Christopher Chamberlin at the time—Michael Levin's cousin is married to Defendant Hartog's sister. *See id.* ¶¶ 62, 220–21, 253. Christopher Chamberlin relied on Defendants to disclose that relationship, which, in his view, created a conflict of interest. *E.g.*, *id.* ¶¶ 101–02, 295. Christopher

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).
[2] *Chamberlin v. Hartog, Baer & Hand, APC*, No. 19-cv-08243-JCS, 2020 WL 2322884 (N.D. Cal. May 11, 2020). Citations herein to the Court's previous order refer to page numbers of the version filed in the Court's ECF docket.

Chamberlin had mentioned to Baer at the time he retained HBH that Jane Chamberlin and Michael Levin were related to former U.S. Senator Carl Levin and then-U.S. Representative Sander Levin. *Id.* ¶ 107.

Christopher Chamberlin asserted claims for: (1) declaratory judgment that his retainer agreement with HBH "is void against public policy because it created an undisclosed, unwaivable, and irreconcilable conflict of interest," *id.* ¶ 292–301; (2) fraudulent inducement, *id.* ¶¶ 302–39; (3) breach of fiduciary duty, *id.* ¶¶ 340–53; (4) breach of the duty of loyalty, *id.* ¶¶ 354–74; (5) "intentional legal malpractice," *id.* ¶¶ 375–98; and (6) "negligent legal malpractice," *id.* ¶¶ 399–414.

### B. The Court's Previous Order

The Court previously dismissed with leave to amend Christopher Chamberlin's claim for fraudulent inducement because Christopher Chamberlin did not allege that any particular defendant actually knew that Michael Levin was Defendant Hartog's sister's husband's cousin, and without such an allegation it was not clear:

> (1) whether Christopher Chamberlin believes any defendant actually had such knowledge or whether he relies only on a theory of constructive knowledge or what Defendants' *should* have known; (2) whether Christopher Chamberlin believes that all Defendants knew of the relationship or that only some of them did; and (3) whether Christopher Chamberlin believes that Defendants knew of the relationship at the time that the parties entered the retainer agreement, or only learned of it at some point thereafter.

1st MTD Order at 11–12. Lacking clarity on Christopher Chamberlin's theory of fraud, the Court declined to reach questions of whether any of those possibilities would support a viable claim for fraudulent inducement. *Id.* at 12. The Court also noted that Christopher Chamberlin did not allege with sufficient particularity the circumstances in which Defendants assured him there was no conflict of interest, and that Christopher Chamberlin had not alleged a breach of any California Rule of Professional Conduct. *Id.* at 12–13. Because Christopher Chamberlin's claims for breach of fiduciary duty, breach of the duty of loyalty, intentional legal malpractice,[3] and declaratory

---

[3] The Court noted Defendants' argument that California does not recognize a claim for

judgment rested on his theory of fraudulent inducement, the Court dismissed those claims as well. *Id.* at 13–15. The Court dismissed or struck Christopher Chamberlin's prayer for punitive damages for the same reason. *Id.* at 15–16.

Defendants did not seek dismissal of Christopher Chamberlin's claim for negligent legal malpractice against Defendants HBH, Baer, and Hartog, and the Court allowed that claim to proceed against those defendants. *Id.* at 15. The Court granted Defendants' motion to dismiss the negligent malpractice claim against Defendant Hand with leave to amend, because Christopher Chamberlin had not alleged that Hand represented him. *Id.* The Court denied Christopher Chamberlin's motion for summary judgment. *Id.* at 16–18.

### C. The First Amended Complaint

Christopher Chamberlin's first amended complaint asserts the same claims as his original complaint: (1) declaratory judgment that the "retainer agreement is void as against public policy because it created an undisclosed, unwaivable, and irreconcilable conflict of interest," 1st Am. Compl. ("FAC," dkt. 47) ¶¶ 337–47; (2) fraudulent inducement, based on concealment, *id.* ¶¶ 348–404; (3) breach of fiduciary duty, *id.* ¶¶ 405–28; (4) breach of the duty of loyalty, *id.* ¶¶ 429–48; (5) "intentional legal malpractice," *id.* ¶¶ 449–72; and (6) "negligent legal malpractice," *id.* ¶¶ 473–87. The factual allegations of Christopher Chamberlin's first amended complaint are similar to his original complaint, with relevant new allegations addressed in context in the Court's analysis below.

### D. The Parties' Arguments

Defendants move once again to dismiss Christopher Chamberlin's fraudulent inducement claim, arguing that his new allegations that Baer "must have been aware" Hartog's brother-in-law was related to former Senator Carl Levin and former Representative Sander Levin (and thus also to Michael Levin) are too speculative to be credited. Mot. (dkt. 48) at 9–10. Defendants also

---

"intentional legal malpractice" as distinct from a general malpractice claim, which requires only negligence, but held that addressing Christopher Chamberlin's claim based on intentional misconduct (i.e., Defendants allegedly choosing to act in Michael Levin's interest rather than Christopher Chamberlin's) separately from his claim asserting negligent error furthered the federal pleading standard's goals of elevating practical concerns of efficiency and notice over legal formalism. 1st MTD Order at 14.

argue that even if Baer knew that Hartog's brother-in-law Daniel Levin was Michael Levin's cousin, the relationship between Baer and Michael Levin was too attenuated to create a conflict of interest or duty to disclose under applicable rules of professional conduct. *Id.* at 10–12. Defendants move to dismiss Christopher Chamberlin's claims for breach of fiduciary duty, breach of the duty of loyalty, declaratory judgment, and intentional malpractice for the same reasons. *Id.* at 12–13. Defendants also move to dismiss again Christopher Chamberlin's malpractice claims against Hand, arguing that he still has not alleged that Hand herself represented Christopher Chamberlin and breached her professional obligations. *Id.* at 14.

Citing caselaw discussing the general principles of conflicts of interest in representation, Christopher Chamberlin argues that "any reasonable person would perceive an actual (not apparent) conflict of interest in doing what's best for a sister and her family (Daniel Levin, and those supported by him) on the one hand; and Chamberlin's litigations goals—exposing Mike Levin's fraud and seeking legal redress for it—on the other." Opp'n (dkt. 49) at 12–14.[4] Christopher Chamberlin asserts that upon a "verbal request to go easy on Mike Levin from Hartog's and Hand's brother-in-law . . . to miss an appellate deadline or wait until it was too late to serve discovery . . . it would be done," *id.* at 13, although his first amended complaint does not allege any such request. Christopher Chamberlin notes that he explicitly conditioned his retention of HBH on the lack of conflict of interest, and cites California cases recognizing that an attorney may not recover fees for services rendered in violation of professional responsibilities. *Id.* at 14. Christopher Chamberlin also cites former California Rule of Professional Conduct 3-310(B)(3), in effect at the time of the events at issue, which required a client's written consent where an attorney had a relationship with someone the attorney knew or should have known would be substantially affected by the representation. *See id.* at 16–19. According to Christopher Chamberlin, the

---

[4] Christopher Chamberlin submits a declaration with his opposition brief. *See* Chamberlin Decl. (dkt. 50). Motions under Rule 12(b)(6) are generally resolved solely on the allegations of a plaintiff's complaint and legal arguments presented in the parties' briefs, without reference to extraneous evidence. Regardless, and taking into account that such a declaration might in some cases shed light on whether a pro se plaintiff could amend a deficient complaint to state a valid claim, nothing in the declaration informs the dispositive question of whether any defendant had a personal or professional relationship with someone they knew or should have known would be affected substantially by the outcome of Christopher Chamberlin's dispute with Michael Levin.

purported conflict of interest and errors in representation warrant rescission of the retainer agreement, *id.* at 19–20, as well as a claim for fraudulent inducement based on either intentional concealment or constructive concealment, because Defendants breached a fiduciary duty in failing to disclose their relationship with the Levin family, *id.* at 21–28. Christopher Chamberlin also argues that such a breach supports his claim for malpractice and his prayer for punitive damages, *id.* at 28–30, and that Hand's alleged supervision of Woods's work representing Christopher Chamberlin supports his malpractice claim against Hand, *id.* at 30–31. Christopher Chamberlin requests leave to amend once again if the Court grants Defendants' motion. *Id.* at 31.

Defendants argue again in their reply brief that Christopher Chamberlin has not alleged that any defendant knew of any relationship with Michael Levin or intentionally concealed that relationship from Christopher Chamberlin, and that the Court should disregard Christopher Chamberlin's "implausible speculation that attorney David Baer 'must have' or 'would have' known' of this attenuated and legally irrelevant relationship." Reply (dkt. 51) at 2–3. Defendants also argue that allegations of what any defendant should have known are not sufficient to show fraud. *Id.* at 3–4. Defendants contend that Christopher Chamberlin has not asserted a claim for "constructive fraud" in his first amended complaint, and should not be granted leave to do so because he cannot allege either any duty to disclose or any defendant's actual knowledge of the purportedly disqualifying relationship. *Id.* at 5–9. According to Defendants, Christopher Chamberlin's claims for declaratory judgment, breach of fiduciary duty and the duty of loyalty, and intentional malpractice fail for the same reasons. *Id.* at 9–10. Defendants also argue that Christopher Chamberlin still has not alleged any involvement or error by Hand sufficient to support his negligent malpractice claim against her. *Id.* at 10–11.

## III.   ANALYSIS

### A.   Legal Standard

A complaint may be dismissed for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a claimant's burden at the pleading stage

is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A pleading must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Rather, the claim must be "'plausible on its face,'" meaning that the claimant must plead sufficient factual allegations to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

Rule 9(b) of the Federal Rules of Civil Procedure sets a heightened pleading standard for claims based on fraud. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Ninth Circuit has held that in order to meet this standard, a "complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity," *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993), or in other words, "'the who, what, when, where, and how' of the misconduct charged," *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation omitted). "Rule 9(b) demands that the circumstances constituting the alleged fraud 'be specific

7

enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Kearns*, 567 F.3d at 1124 (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)) (ellipsis in original).

Where the complaint has been filed by a pro se plaintiff, as is the case here, courts must "construe the pleadings liberally . . . to afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). "A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Schucker v. Rockwood*, 846 F.2d 1202, 1203−04 (9th Cir. 1988) (per curiam)). When it dismisses the complaint of a pro se litigant with leave to amend, "'the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively.'" *Id.* (quoting *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)).

### B.   Fraudulent Inducement

California law requires the following elements for a claim for fraudulent inducement based on concealment:

> (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.

*Kaldenbach v. Mut. of Omaha Life Ins. Co.*, 178 Cal. App. 4th 830, 850 (2009). To establish a duty to disclose, Christopher Chamberlin relies on former California Rule of Professional Conduct 3-310(B)(3), which was in effect at the time he retained Defendants as his counsel, and which required written consent for representation where "[t]he member has or had a legal, business, financial, professional, or personal relationship with another person or entity the member knows or reasonably should know would be affected substantially by resolution of the matter."

Despite the Court previously noting this deficiency, *see* 1st MTD Order at 12–13,

Christopher Chamberlin still has not alleged that any defendant "had a legal, business, financial, professional, or personal relationship" with Michael Levin. Nothing in Christopher Chamberlin's first amended complaint or opposition brief alters the Court's previous conclusion that "an attorney's sister's husband's cousin is [not] the sort of 'personal relationship' contemplated by the rule." *See id.* at 12. Nor has Christopher Chamberlin plausibly alleged that any person more closely related to any defendant—e.g., Hartog's sister Fay Levin, who is Michael Levin's cousin's wife—"would be affected substantially by resolution of" the dispute between Christopher Chamberlin and Michael Levin, much less that any defendant knew or should have known of such an effect.

Christopher Chamberlin alleges that "Daniel Levin, Ambassador Fay Levin, and Mike Levin share an interest in protecting Mike Levin's personal and professional reputation" and "in protecting the Levin name, generally." FAC ¶ 267–68. Even taking that allegation as true for the purpose of a motion to dismiss, none of those people represented Christopher Chamberlin, and none of them is named as a defendant in this action. Looking to the named defendants, Christopher Chamberlin still does not allege that Hartog or Hand knew that Michael Levin was Hartog's brother-in-law's cousin.[5] To the extent he alleges that Baer had some knowledge of a relationship between Michael Levin and Hartog's brother-in-law—because Christopher Chamberlin told Baer that Michael Levin was related to the Levins who served in Congress, and Baer "must have been aware" that Hartog's brother-in-law was also related to those Levins, FAC ¶¶ 133, 284—there is still no indication that Baer knew any details of that relationship, or that even if he had, he would have considered such an attenuated connection relevant to the representation. In any event, despite the assertions of Christopher Chamberlin's opposition brief, some vague extended familial relationship between an adverse party and a law partner's sister's husband does not, in itself, create a "profound personal conflict of interest." *Cf.* Opp'n at 18. The

---

[5] The first amended complaint states that Christopher Chamberlin "believes that John Hartog provided [another lawyer's] name for Mike Levin through Daniel Levin." FAC ¶ 265. Assuming for the sake of argument that Christopher Chamberlin's belief is sufficiently plausible to be taken as true, that allegation does not address whether Hartog actually knew who Michael Levin was, as opposed to Hartog merely providing his brother-in-law Daniel Levin with the name of a California probate lawyer.

Court concludes that the familial relationship alleged in the first amended complaint does not constitute a conflict of interest under California law.

Christopher Chamberlin appears to put much stock in Hartog's sister Fay Levin's appointment as an ambassador in 2009, alleging that Hartog and his wife Hand were required to disclose their political contributions that year as a result. *See* Opp'n at 18 (citing FAC ¶¶ 269–79, 281–85). But Fay Levin's status as a public figure does not indicate that any defendant knew that *Michael* Levin—who is not alleged to have held any public office or otherwise been in the public eye—was her husband's cousin, much less support a conclusion that such a relationship, had they been aware of it, would have influenced how any defendant carried out their professional responsibilities in representing Christopher Chamberlin. Nor does Hartog and Hand's attendance at their niece's and nephew's weddings, *see* FAC ¶ 280, evince that they would hold loyalty to anyone bearing the fairly common surname "Levin."

The Court therefore concludes once again that Christopher Chamberlin has not plausibly alleged a violation of former Rule 3-310(B)(3). Christopher Chamberlin has identified no other potential source of legal duty to disclose any defendant's several-steps-removed relationship with Michael Levin. Defendants' motion to dismiss Christopher Chamberlin's claim for fraudulent inducement is GRANTED.

Despite the Court previously granting leave to amend this claim to cure the same defect in the original complaint, nothing in Christopher Chamberlin's first amended complaint, opposition brief, or declaration suggests that Christopher Chamberlin could state a claim based on any conflict of interest or loyalty of Defendants to Michael Levin if granted leave to amend again. The Court therefore concludes that further leave to amend would be futile, and dismisses this claim with prejudice.

### C.  Remaining Claims Based on Conflict of Interest

Christopher Chamberlin's claims for declaratory judgment voiding the retainer agreement, *see* Opp'n at 11–20, breach of fiduciary duty, *see id.* at 267–28, breach of the duty of loyalty, *see id.* at 28, and intentional malpractice, *see id.* at 28–30, are all based on the same purported conflict of interest as his claim for fraudulent inducement. Because, as discussed above, Christopher

10

Chamberlin has not plausibly alleged any conflict of interest under California law, and there is no indication that he could do so if granted further leave to amend, Defendants' motion to dismiss these claims with prejudice is GRANTED.

### D. Negligent Malpractice Claim Against Hand

"In a legal malpractice action arising from a civil proceeding, the elements are (1) the duty of the attorney to use such skill, prudence, and diligence as members of his or her profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage resulting from the attorney's negligence." *Coscia v. McKenna & Cuneo*, 25 Cal. 4th 1194, 1199 (2001). The Court previously dismissed Christopher Chamberlin's claim for negligent malpractice against Hand, holding that "[n]either Christopher Chamberlin's allegation that 'HBH' oversaw the matter in which it represented him when Baer was unavailable, nor the suggestion in his opposition brief that Hand might have supervised Julie Woods in the latter's representation of Christopher Chamberlin, is a substitute for factual allegations in the complaint that Hand *herself* represented Christopher Chamberlin and acted in a manner that fell short of her professional obligations, to Chamberlin's detriment." 1st MTD Order at 15.[6]

Although Christopher Chamberlin's first amended complaint is replete with allegations describing Hand's twice-by-marriage relationship to members of the Levin family, it still includes little in the way of allegations regarding malpractice on her part. Christopher Chamberlin now alleges only that Hand "supervised and worked with associate, Julie R. Woods, who was assigned to work on Plaintiff's case," and that "Hand directed Woods' legal work and had access to Plaintiff's confidential material." FAC ¶¶ 384–85. Christopher Chamberlin does not allege that Hand even worked on his matter, made any particular error with respect to his case, or that her conduct had any particular effect on him. Based on Christopher Chamberlin's failure to cure the defect identified in the Court's previous order, Defendant's motion to dismiss this claim against Hand, with prejudice, is GRANTED.

---

[6] Defendants did not then, and do not now, move to dismiss this claim against Baer, Hartog, or HBH.

## IV. CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss in part Christopher Chamberlin's first amended complaint is GRANTED, and all of Christopher Chamberlin's claims, except for negligent malpractice against Defendants HBH, Baer, and Hartog, are DISMISSED with prejudice. Defendants shall file their answer no later than September 15, 2020

Christopher Chamberlin, who is representing himself, is encouraged to contact the Federal Pro Bono Project's Pro Se Help Desk for assistance. Lawyers at the Help Desk can provide basic assistance to parties representing themselves but cannot provide legal representation. In-person appointments are not currently available due to the COVID-19 public health emergency, but Christopher Chamberlin may contact the Help Desk at 415-782-8982 or FedPro@sfbar.org to schedule a telephonic appointment.

**IT IS SO ORDERED.**

Dated: September 1, 2020

_____
JOSEPH C. SPERO
Chief Magistrate Judge