UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHRISTOPHER BAYRE CHAMBERLIN,

Plaintiff,

v.

HARTOG, BAER & HAND, APC, et al.,

Defendants.

Case No.  19-cv-08243-JCS

**ORDER RE MOTIONS FOR SUMMARY JUDGMENT, MOTION TO EXCLUDE**

Re: Dkt. Nos. 200, 201, 202

## I.    INTRODUCTION

Plaintiff Christopher Chamberlin, pro se, brought this action asserting negligent legal malpractice and other claims against his former attorneys – Hartog Baer & Hand, APC ("HBH") and its three named partners, David Baer, John Hartog and Margaret Hand – in a probate matter concerning his late mother's estate. HBH, in turn, filed counterclaims against Chamberlin for breach of contract, book account, account stated, and quantum meruit, seeking $75,633.97 for unpaid legal services and advanced costs.  Dkt. no. 12.  On summary judgment, the Court dismissed all of the claims in Chamberlin's First Amended Complaint except his negligent malpractice claim, finding in favor of Chamberlin on that claim with respect to $2,831.91 in costs awarded against Chamberlin in the probate case. Dkt. no. 125 ("February 2, 2022 Summary Judgment Order") at 40.  The Court granted Chamberlin's motion for summary judgment on HBH's counterclaim for account stated and denied summary judgment on the remaining counterclaims, finding that those counterclaims could proceed to trial.   *Id.*

The parties stipulated to a stay of all proceedings pending an interlocutory appeal by Chamberlin of the Court's rulings on the claims in his First Amended Complaint and the Court entered a Rule 54(b) Judgement as to those claims. (Dkt. no. 158).  The Ninth Circuit affirmed the

Court's summary judgment rulings as to Chamberlin's claims and the Supreme Court denied Chamberlin's petition for writ of certiorari.   Proceedings have now resumed in this Court, where the parties bring cross-motions for summary judgment on HBH's counterclaims, which are the only claims that remain in the case.[1]   HBH asserts that the undisputed facts establish it is entitled to prevail on all of its counterclaims and that no jury trial is needed to fully decide those claims. Chamberlin argues that the undisputed facts establish that he does not owe "a penny" for HBH's legal services and furthermore, that HBH should return the legal fees he paid to HBH for legal services in the probate action.  He also rejects HBH's argument that its counterclaims can be decided by the Court and not a jury if the Court concludes that fact questions remain on those claims.

The following motions are currently pending:  1) Plaintiffs' Motion for Summary Judgment and Award of Litigation Costs, Expert's Fees, and Interest ("Chamberlin's Summary Judgment Motion"); 2) Plaintiff's Motion to Exclude Expert Testimony of Defendant David W. Baer ("Chamberlin's Motion to Exclude"); and 3) HBH's Motion for Summary Judgment, or Partial Summary Judgment ("HBH Summary Judgment Motion").  A hearing on the Motions was held on February 16, 2024.  For the reasons stated below, all of the motions are DENIED.[2]

## II.     BACKGROUND

This order assumes the parties' familiarity with the facts and history of the case, which are set forth in more detail in the Court's February 2, 2022 Summary Judgment Order and its May 12, 2022 Order Regarding Punitive Damages and Motion for Reconsideration.  Therefore, the Court summarizes here only the arguments raised in the Motions presently before the Court.

---

[1]HBH originally asserted counterclaims for breach of contract, book account, account stated and quantum meruit.  Although the Court granted summary judgment in Chamberlin's favor on the account stated counterclaim in its February 22, 2022 Summary Judgment Order, HBH seeks summary judgment on all of its counterclaims, including its counterclaim for account stated.  The Court disregards HBH's arguments in its summary judgment motion as to the account stated claim.

[2] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).  On September 1, 2023, Chamberlin brought a motion to vacate referral to a magistrate judge but that motion was denied by district judge Gonzalez Rogers. Dkt. no. 190.

United States District Court
Northern District of California

United States District Court
Northern District of California

## A.      Chamberlin's Summary Judgment Motion

Chamberlin asks the Court to enter summary judgment in his favor on HBH's counterclaims for breach of contract, book account and quantum meruit, arguing that those claims fail as a matter of law.  Notice of Motion re Chamberlin Summary Judgment Motion at 1.  He further contends that under Rule 56 of the Federal Rules of Civil Procedure he is entitled to: 1) "disgorgement by fee forfeiture, with post judgment interest, from Defendants for the sum of $170,286.34"; and 2) an award under Rule 54 and 28 U.S.C. § 1920 of litigation costs and expert fees, along with  pre- and post-judgment interest on those expenses and on the $2,831.91 damages award on his negligent malpractice claim.  *Id.* at 2.

Chamberlin argues that while the Court allowed HBH's counterclaims for breach of contract, book account and quantum meruit to go forward on the basis that it was " 'aware of no authority or rationale for the proposition that malpractice in one element of Defendants' representation of Chamberlin would bar [their] claim[s] as to *other unrelated work*[,]' . . . in Chamberlin's case, there was no '*other unrelated work*.' "  Chamberlin Summary Judgment Motion at 2 (quoting February 2, 2022 Summary Judgment Order at 36) (emphasis added in Chamberlin's brief).   In particular, Chamberlin contends, HBH's failure to file a timely appeal, which the Court found on summary judgment was negligent malpractice, prevented him from challenging the "multiple ways" HBH "sabotaged" his case, all of which he would have been able to raise at the end of the probate case but for HBH's failure to timely appeal the probate court's September 6, 2016 demurrer order.  *Id.*   Therefore, Chamberlin asserts, "[n]ot only does California law entitle Chamberlin to dismissal of these claims; it entitles Chamberlin to an order compelling his unfaithful lawyers to forfeit their fees;  and an award of litigation costs, expert's fees, and pre- and post-judgment interest."  *Id.* (citing Restatement (Third) of Law Governing Lawyers § 37). Chamberlin argues that HBH's counterclaims fail because California law prohibits fee collection for malpractice and HBH's services were "not only useless; they were disloyal and damaging."  *Id.* at 6-11. He cites extensively to evidence he contends establishes that the services provided by HBH "fell below any permissible standard of due care that applied to probate litigation in California."  *Id.* at 8.

3

1    Turning to the specific counterclaims, Chamberlin argues that both HBH's claim for book

2    account[3] and breach of contract "presuppose the existence of a contract or a contract-based duty,

3    which Chamberlin contests on the basis that no valid contract exists because Defendants deceived

4    Chamberlin by concealing their relation to opposing party, Mike Levin." *Id.* at 12.  In particular,

5    Chamberlin contends he "explicitly conditioned the initial consultation and following contract

6    with Defendants on no conflicts and no connections with, much less family relation to, the

7    opposing party's, Mike Levin's, family" and therefore, no contract was formed as a matter of law.

8    *Id.*  Chamberlin further asserts that retainer agreements are construed in favor of the client and

9    contain "an implied agreement by the attorney to deal in good faith and to perform with reasonable

10   skill" but HBH did not meet that obligation.  *Id.* at 14.  Moreover, Chamberlin contends, his

11   retainer agreement with HBH did not cover appellate work – nor did he authorize such work – and

12   therefore, HBH is not entitled to fees for work on appeals filed after the probate case.  *Id.* at 15.

13   As to the quantum meruit claim, Chamberlin argues that he is entitled to summary

14   judgment because this claim is for the "reasonable value" of his attorneys' services but

15   Chamberlin "has sworn and shown that the Defendants 'services' provided no value to him; they

16   damaged him."  *Id.*  at 16-19. Further, Chamberlin asserts that he is entitled to the remedy of fee

17   forfeiture to recover fees he already paid to HBH, in the amount of $170,286.34,[4] because HBH

18   engaged in "clear and serious" violations of their duties to Chamberlin with respect to the

19   representation they provided.  *Id.* at 20-22.

20   Finally, Chamberlin asks the Court to award litigation costs, expert fees, and pre- and post-

21   judgment interest on the judgment entered under Rule 54(d)(1) on the basis that he is the

22

23   _____

24   [3] Chamberlin refers to this claim as "account stated" but also refers to it as "Count I."  *Id.*  at 12.
     As the Court granted summary judgment in Chamberlin's favor on the account stated claim,
25   which is HBH's second cause of action – and its first cause of action is a claim for book account – the
     Court concludes that Chamberlin intended to make this argument as to the book account claim
     rather than the account stated claim.

26   [4] Chamberlin states that this amount, "broken down[,]" is for: 1)  "$95,545.12, fees paid per
     invoices under a vitiated contract from 28 July 2016-29 March 2017 for conflicted, worthless,
27   damaging conduct"; 2) "$74,741.22 for fees paid per invoices, no contract, from April to August
     2017; for conflicted, worthless, damaging conduct; and" 3) "$40,000 paid in good faith, no
28   invoices, no contract from September 2017 until June 2018, for conflicted, worthless, damaging
     conduct."  *Id.*  at 21-22.  These three amounts add up to $210,286.34.

United States District Court
Northern District of California

prevailing party in this litigation.  *Id.* at 22-24.

**B.    HBH's Summary Judgment Motion and Opposition**

HBH contends it is entitled to summary judgment on its counterclaims and an award of $75,633.97, plus interest and costs.  It asserts that it provided the legal services at issue pursuant to a fee agreement with Chamberlin and provides invoices that were issued to Chamberlin at the instructions of David Baer for the amount sought by HBH.  HBH Summary Judgment Motion at 8 (citing Baer Decl. ¶¶ 4, 6 & Ex. 1 (Retainer Agreement) & Ex. 2 (Invoices)).  It further provides evidence that four of these invoices, totaling $75,633.97, remain outstanding (hereinafter, the "Outstanding Invoices").  *Id.* (citing Baer Decl. ¶ 7 & Ex. 3 (Outstanding Invoices)).

In his declaration, Baer states that the Outstanding Invoices "itemize work performed by HBH for the time period of September 14, 2017[ ] to December 27, 2018 [and] [a]ll said work referenced in the Outstanding Invoices was in fact performed and it was approved by [Baer] as being necessary, reasonable, and required for HBH's representation of Chamberlin."  *Id.* (citing Baer Decl. ¶¶ 7-12).  Baer further states that "[t]he rates charged were HBH's normal hourly rates pursuant to the Chamberlin Fee Agreement."  *Id.* He describes the work covered by the Outstanding Invoices as encompassing the following "major tasks["], the "vast majority" of which Baer himself performed:

> (i) drafting the reply brief in support of appellant Chamberlin's appeal of the Final Petition Order in the probate matter, (ii) drafting Chamberlin's cross-respondent's [sic] as to the cross-appeals filed by other interested parties, and (iii) preparing for and attending appellate arguments.

Baer Decl. ¶ 7.  According to HBH, "[t]he Outstanding Invoices do not contain any charges attributable to the appeal of the Demurrer Order."  HBH Summary Judgment Motion at 9 (citing Baer Decl. ¶¶ 7-10). Baer states that "[p]rior to issuing any invoice to Chamberlin, it was [his] standard practice to review the time entries and costs and to exercise billing judgment to provide for any necessary reductions. [He] did not charge for hours that [he] determined were excessive, redundant, or otherwise unnecessary. [He] followed [his] standard practice prior to issuing each of the Outstanding Invoices."  Baer Decl. ¶ 8.

HBH argues that all of Chamberlin's defenses to payment of the Outstanding Invoices

have now been affirmatively decided against him and Chamberlin has no remaining claims that would allow him to avoid liability on HBH's counterclaims.  HBH Motion at 10.   Furthermore, it points to the fact that Chamberlin failed to disclose a fee expert to challenge the reasonableness of HBH's fees.  *Id.*   HBH argues that under these circumstances, "the Court can and should decide HBH's claims without need of a jury," citing *Pech v. Morgan,* for the proposition that "[i]t is well established . . . that the determination of what constitutes reasonable legal services is committed to the discretion of the trial court, and the 'value of legal services performed in a case is a matter in which the trial court has its own expertise.'"  *Id.* (citing 61 Cal.App.5th 841, 856 (2021) (internal citations omitted)).  HBH continues, "Chamberlin has no related claims, has no expert, is not personally competent to testify on the propriety of the Outstanding Invoices, and his expected personal musings and arguments are not admissible evidence."  *Id.* at 11. Rather, the only admissible evidence, according to HBH, is its own evidence, "which establishes that the work was performed in the Probate Action pursuant to the terms of the Chamberlin Fee Agreement, billed to Chamberlin in the Outstanding Invoices, and HBH did not charge for hours that Baer determined were excessive, redundant, or otherwise unnecessary."  *Id.*   HBH contends that evidence is sufficient to establish all the elements of HBH's counterclaims as a matter of law.  *Id.*  at 12-13.

Similarly, HBH rejects Chamberlin's assertion that he is entitled to recover fees he already paid HBH under a theory of fee forfeiture.  HBH Opposition to Chamberlin Summary Judgment Motion at 13.  HBH asserts that this argument is "nonsensical" because Chamberlin has no remaining claims in this case.

Finally, HBH rejects as premature and lacking in merit Chamberlin's demand for fees and costs as the prevailing party in this case.  *Id.*  at 13.

## C.    Chamberlin's Motion to Exclude

Defendants' Rule 26 disclosures dated May 7, 2021 list David Baer, Julia Woods, J.R. Hastings, Andrew Rask and Rachelle Dorris as unretained experts.  Dkt. no. 200-2.  As to Baer, Defendants state in their disclosures:

> Mr. Baer may testify regarding the skill, knowledge and care used in Defendants' representation of Plaintiff, including but not limited to Defendants' acting in accordance with the standard of care reasonably

United States District Court
Northern District of California

6

1
2
3
4
5
6

> careful attorneys would have used in similar circumstances, conducting reasonable research, holding honest and reasonable beliefs, making informed decisions, exercising reasonable judgment, communicating with Plaintiff and appropriately supervising attorneys and staff. Mr. Baer may also testify regarding the reasonableness of the attorney fees and expenses in Defendants' representation of Plaintiff, and related issues. Mr. Baer's testimony is expected to be based on his skill, knowledge and care and personal knowledge of Defendants' handling and supervision of Plaintiff's representation in Case Number 1503278, Estate of Sylvia Jane Levin Chamberlin, in Marin County Superior Court, and the related appeals, briefings, and rulings, and communications and the billing entries of HBH.

7   *Id.*   In his Motion to Exclude, Chamberlin asks the Court to exclude any expert opinion testimony

8   at trial (and not consider such opinions on summary judgment) from Baer, Woods, Hastings, Rask

9   and Dorris on the basis that Defendants failed to provide "a summary of the facts and opinions to

10   which [these witnesses are] expected to testify[,]" as required under Rule 26(a)(2)(C) for non-

11   retained witnesses.  Motion at 4-7.  As to Baer, Chamberlin further asserts that any expert opinions

12   should be excluded "because during his deposition—upon instruction of counsel, Mr. D'Amato—

13   Defendant Baer refused to answer questions about the standard of care in this case or the value of

14   his services to Chamberlin[.]"  *Id.* at 1.

15   In Chamberlin's supporting declaration, he  asks that "[i]f the court allows Defendant Baer

16   (or any of the other 'unretained experts') to testify as an expert, [the Court issue] an order

17   compelling Defendant Baer (and any others) to sit for another deposition—at Defendants' cost—at

18   least a month before the 3 June 2024 trial, and to specifically produce the documents that

19   Defendants prepared to file in the Court of Appeal to reverse Judge Chernus's order sustaining

20   Mike Levin's demurrer without leave to an appeal." Dkt. no. 200-1 at p. 4.

21   **III.    ANALYSIS**

22   **A.    Legal Standards Under Rule 56**

23   Summary judgment on a claim or defense is appropriate "if the movant shows that there is

24   no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

25   law."  Fed. R. Civ. P. 56(a).  In order to prevail, a party moving for summary judgment must show

26   the absence of a genuine issue of material fact with respect to an essential element of the non-

27   moving party's claim, or to a defense on which the non-moving party will bear the burden of

28   persuasion at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

United States District Court
Northern District of California

1    Once the movant has made this showing, the burden then shifts to the party opposing

2    summary judgment to designate "'specific facts showing there is a genuine issue for trial.'" *Id.*

3    (citation omitted); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely

4    disputed must support the assertion by . . . citing to particular parts of materials in the record

5    . . . ."). "[T]he inquiry involved in a ruling on a motion for summary judgment . . . implicates the

6    substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson v.*

7    *Liberty Lobby Inc.*, 477 U.S. 242, 252 (1986).  The non-moving party has the burden of

8    identifying, with reasonable particularity, the evidence that precludes summary judgment. *Keenan*

9    *v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  Thus, it is not the task of the court to scour the

10   record in search of a genuine issue of triable fact. *Id.*; *see Carmen v. S.F. Unified Sch. Dist.*, 237

11   F.3d 1026, 1031 (9th Cir. 2001); Fed. R. Civ. P. 56(c)(3).

12   On summary judgment, the court draws all reasonable factual inferences in favor of the

13   non-movant, *Scott v. Harris*, 550 U.S. 372, 378 (2007), but where a rational trier of fact could not

14   find for the non-moving party based on the record as a whole, there is no "genuine issue for trial"

15   and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574,

16   587 (1986).

17       **B.    Motion to Exclude**

18   Before determining whether either side has established that they are entitled to judgment

19   on the remaining counterclaims based on undisputed evidence, the Court addresses Chamberlin's

20   argument that certain expert opinions and supporting exhibits should not be considered on

21   summary judgment and/or permitted at trial because Defendants' Rule 26 disclosures as to these

22   non-retained experts was insufficient.[5]  Because HBH has not offered any opinions of Julia

23

24   [5] In the Motion to Exclude, Chamberlin requests that the Court exclude expert opinions of David
     Baer, Julia Woods, J.R. Hastings, Andrew Rask and Rachelle Dorris, as noted above.  In his reply
25   brief, Chamberlin further requests that the Court exclude Exhibits 1-4 to the Baer Declaration for
     the same reason and on the additional ground that those exhibits have not been properly
26   authenticated.  Reply on Motion to Exclude (dkt. no. 208) at 5.  These exhibits contain the parties'
     retainer agreement (Exhibit 1), HBH's invoices for services to Chamberlin, including the
27   outstanding invoices on which the counterclaims are based (Exhibits 2 and 3) and invoice letters
     sent from Baer to Chamberlin explaining the reasons for excluding or including certain charges on
28   the invoices (Exhibit 4).  Because the Baer Declaration was filed on the same date as

United States District Court
Northern District of California

1   Woods, J.R. Hastings, Andrew Rask or Rachelle Dorris to support its summary judgment motion,

2   the Court considers only whether the opinions offered by Baer in his summary judgment

3   declaration (dkt. no. 202-2) and Exhibits 1-4, attached thereto, are subject to exclusion under Rule

4   37(c).  The Court does not at this time rule on Chamberlin's request as it relates to Woods,

5   Hastings, Rask or Dorris and Chamberlin is not precluded from renewing his request in a pre-trial

6   motion in limine, if appropriate, as to those individuals. Further, the Court does not decide at this

7   time whether Baer may be precluded at trial from offering expert opinions that are materially

8   different from the opinions offered in his summary judgment declaration.

9       Under the Federal Rules of Evidence, "[i]f scientific, technical, or other specialized

10   knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a

11   witness qualified as an expert by knowledge, skill, experience, training, or education may testify

12   thereto in the form of an opinion or otherwise." Fed.R.Evid. 702.  A party must disclose the

13   identity of any expert witnesses, whether retained or non-retained, expected to testify at trial.

14   Fed.R.Civ.P. 26(a)(2)(A).  Disclosure of a non-retained expert "must state: (i) the subject matter

15   on which the witness is expected to present evidence . . . ; and (ii) a summary of the facts and

16   opinions to which the witness is expected to testify." Fed.R.Civ.P. 26(a)(2)(C). A disclosure must

17   be corrected "in a timely manner if the party learns that in some material respect the disclosure . . .

18   is incomplete or incorrect, and if the additional or corrective information has not otherwise been

19   made known to the other parties during the discovery process or in writing." Fed.R.Civ.P.

20   26(e)(1).

21       Under Federal Rule of Civil Procedure 37(c), a party may be subject to sanctions for

22   failing to comply with the rules regarding disclosure of expert witnesses. The Ninth Circuit affords

23   "wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)," which

24

25   Chamberlin's Motion to Exclude, the Court does not consider untimely Chamberlin's objections to
26   these exhibits and will consider here whether the purported insufficiency of HBH's Rule 26
     disclosures warrants their exclusion. The Court rejects Chamberlin's separate evidentiary
27   objections to the exhibits attached to the Baer Declaration, however, as those documents have
     been properly authenticated under Rule 803(6) of the Federal Rules of Evidence by the Baer
28   Declaration, dkt. no. 202-2,  which establishes that Baer had personal knowledge that these
     documents meet the requirements of the business record exception to the hearsay rule.

United States District Court
Northern District of California

1    "gives teeth" to the disclosure requirements. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259

2    F.3d 1101, 1106 (9th Cir.2001) (citing *Ortiz Lopez v. Sociedad Espanola de Auxilio Mutuo y*

3    *Beneficiencia de Puerto Rico*, 248 F.3d 29, 34 (1st Cir.2001)). This rule provides that a party who

4    fails to provide required information "is not allowed to use that information or witness to supply

5    evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is

6    harmless." Fed.R.Civ.P. 37(c)(1).

7           On summary judgment, HBH offers Baer's opinions and the four supporting exhibits

8    Chamberlin challenges only on the question of whether the fees and costs that are the subject of

9    HBH's counterclaims were reasonably and necessarily incurred. Therefore, the Court limits its

10   inquiry as to the adequacy of HBH's disclosures and the harmlessness of any deficiencies in its

11   disclosures to that issue. On the first question, the Court's analysis is relatively straightforward.

12   HBH's disclosure as Baer's opinions amounted to a single sentence:   "Mr. Baer may also testify

13   regarding the reasonableness of the attorney fees and expenses in Defendants' representation of

14   Plaintiff, and related issues." Dkt. no. 202-2. HBH did not, however, provide a summary of the

15   facts and opinions to which Baer would testify.  Therefore, HBH's disclosures on this topic do not

16   meet the requirements of Rule 26(a)(2)(C).  *See, e.g. Pineda v. City & Cnty. of San Francisco*, 280

17   F.R.D. 517, 523 (N.D. Cal. 2012) (disclosure of non-retained experts that described subject matter

18   of opinions to be offered but did not include summary of facts on which opinions were based

19   found insufficient under Rule 26(a)(2)(C)). The Court finds, however, that HBH's failure to

20   adequately disclose the facts supporting Baer's opinions is harmless for the reasons set forth

21   below.

22          In determining whether a defendant's failure to adequately disclose an expert witness is

23   harmless, courts consider whether the failure to disclose has impaired the plaintiff's ability to

24   conduct effective discovery and what information the plaintiff has in their position related to the

25   opinions the expert will offer.  *See Pineda*, 280 F.R.D. at 523 (holding that failure to disclose was

26   not harmless because "[w]ithout information as to the opinions Plaintiffs' non-retained expert

27   witnesses are expected to testify to and the main facts on which these opinions are based,

28   Defendant's ability to meaningfully depose or cross-examine these witnesses is undermined."); *cf.*

*Gorrell v. Sneath*, No. 1:12-CV-0554-JLT, 2013 WL 4517902, at *4 (E.D. Cal. Aug. 26, 2013) (holding that failure to disclose was harmless because "Plaintiff possesses much of the information to which Sneath and Shah assert they will testify given their responses to Plaintiff's written discovery requests").

Chamberlin has in his possession all of the facts on which Baer's opinions relating to the reasonableness of the fees HBH seeks are based, namely, the retainer agreement that Chamberlin signed, the invoices that were sent by HBH to Chamberlin, and the invoice letters Baer sent to Chamberlin providing detailed explanations of his reasons for excluding fees for certain services and billing for others.  Furthermore, based on the Court's review of the excerpts of Baer's deposition provided by both sides, *see* dkt. nos. 200-2 (Chamberlin Motion to Exclude Decl., Ex. B), 207-1 (D'Amato Opposition Decl., Ex. 1), 209-2 (Chamberlin Reply Decl., Exs. A-D), it does not find any instance in which counsel instructed Baer not to respond to questions about specific charges listed on the outstanding invoices.[6]  Rather, counsel expressly acknowledged that

---

[6] In his supporting declaration, Chamberlin states that at Baer's deposition he asked Baer questions "about the standard of care and value of [Baer's] 'work' in [Chamberlin's] case" but that Baer was instructed not to answer. Dkt. no. 200-1 ¶¶ 6-7.  Chamberlin identifies ten specific passages in the deposition transcript to support his point.  *Id.*  ¶ 24 & Ex. B (deposition excerpts).  The vast majority of these passages involve questions about whether Baer and HBH's representation of Chamberlin fell below the standard of care because Baer failed to file a timely appeal of the 2016 demurrer order and none of the questions directly addressed the value of HBH's work.  *See, e.g.,* Baer Dep. at 97 ("Mr. Baer, did your conduct fall below the standard of care at any time during my case?"), *id.* at 98 ("Did I lose the ability to gain advantage in the final distribution by failing to file a timely appeal of a demurrer order of 6 September 2016?"); *id.* at 99 ("Did I lose the ability to gain advantage in the final distribution by failing to file a timely appeal of a demurrer order of 6 September 2016?"); *id.* at 102 ("Do you agree that attorney's fees are available as damages to a probate litigant who can prove an executor breached his fiduciary duties?"); *id.* at 113 ("Mr. Baer, do you concede liability for failing to file a timely appeal on a 6 September 2016 demurrer order?"); *id.*  at 115 ("Is there a rule of law relieving you from liability for failing to file the demurrer order  appeal in time?").  The question of whether HBH met the standard of care goes to Chamberlin's malpractice claim.  As judgment has already been entered on that claim and affirmed by the Ninth Circuit, that question has already been decided.  Therefore, Chamberlin was not prejudiced by Baer's failure to answer these questions. Moreover, to the extent that answers to these questions might be relevant to issues other than the standard of care in a malpractice case, Chamberlin could have brought a motion to compel but he did not.  It is now long past the time for motions to compel.  Civ. L.R. 37-3 (motions to compel must be filed within 7 days of discovery cut-off). "Parties may not unduly delay in filing motions to compel no matter their merit." *KST Data, Inc. v. DXC Tech. Co.*, 344 F. Supp. 3d 1132, 1136 n.1 (C.D. Cal. 2018).  Baer was deposed on February 19, 2021 and he was disclosed as a non-retained expert on May 7, 2021.  Expert discovery closed on July 30, 2021.  Nearly three years have passed and Chamberlin has not sought to compel responses to any question that Baer was instructed not to

---

United States District Court
Northern District of California

1    Chamberlin was entitled to question Baer about the invoices, *see* Baer Depo. at 120 ("You want to

2    ask him about billing in your case or custom and practice of billing in your case, that's fine, but

3    they're not going to get into how they operate their law firm for all clients"). Further, on at least

4    two occasions, Chamberlin asked Baer about the invoices and Baer answered those questions.  *See*

5    Baer Depo. at 36-38 (question re an entry on February 28, 2017 invoice); *id*. at 120-122 (questions

6    about frequency of invoicing and delays related to invoice sent to Chamberlin). Finally,

7    Chamberlin's Answer to the counterclaims makes clear that he understood that HBH's

8    counterclaims turned, in part, on whether the amount claimed by HBH was "the reasonable value

9    of services provided" as he expressly denied that it was.  Answer ¶ 8.

10         Accordingly, the Court DENIES the Motion to Exclude as to the opinions expressed in the

11   Baer summary judgment declaration and the attached exhibits.

12        **C.**    **HBH Summary Judgment Motion**

13         Three counterclaims remain in this case: breach of contract, book account and quantum

14   meruit.  The Court previously found that these claims survived Chamberlin's summary motion

15   because HBH presented evidence from which a jury could reasonably find in favor of HBH on

16   those claims. February 2, 2022 Summary Judgment Order at 35-39.  Now, HBH contends it is

17   entitled to summary judgment on all three claims and that the Court can award the specific dollar

18   amount sought by HBH without the need for a jury trial.  The Court rejects both arguments.

19              **1.  Breach of Contract**

20         Although the Court previously found that the parties' retainer agreement does not cover the

21   appellate work for which fees are sought in HBH's Outstanding Invoices, HBH's Summary

22   Judgment Motion nonetheless relies on that agreement to support its breach of contract claim,

23   asserting that the undisputed evidence establishes that Chamberlin has breached the express terms

24   of the retainer agreement.  *See, e.g.,* HBH Summary Judgment Motion at 1 ("The *HBH fee*

25   *agreement* is valid and not unconscionable. HBH reasonably performed *under the terms of the fee*

26

27   _____

28   answer.  Chamberlin cannot fail to complain about an expert's allegedly inadequate responses or
     instructions not to answer during deposition, and then seek to benefit from that failure by moving
     to exclude the expert's opinion.

United States District Court
Northern District of California

*agreement*. No fees that are due and unpaid are related to services that were required because of HBH's negligence. Based on the undisputed findings of the Court, the hourly rates are fixed by contract and no loadstar determination of reasonable fees is required in this breach of contract action *where the hourly rates are specified in the HBH legal services agreement*.").  Because HBH disregarded the Court's rulings in the February 22, 2022 Summary Judgment Order, the Court begins its analysis by revisiting those rulings as to the breach of contract counterclaim in that Order.

"Under California law, the 'cause of action for damages for breach of contract is comprised of the following elements: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff.' " February 22, 2022 Summary Judgment Order at 38 (quoting *Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*, 116 Cal. App. 4th 1375, 1391 n.6 (2004)). The Court found in in its February 22, 2022 Summary Judgment Order that "there [was] no reasonable reading of the [retainer] agreement as a whole that encompasse[d] appeals within the scope of the engagement[ ]" and that the breach of contract counterclaim therefore failed to the extent it was based on the retainer agreement because the outstanding invoices that are at issue are for appellate work performed by HBH. *Id.* at 39.  The Court further expressed skepticism as to HBH's argument that the fees it sought for appellate work could be recovered under Cal. Bus. & Prof. Code § 6148, which "allows an exception [to the requirement for a written fee agreement] for '[a]n arrangement as to the fee implied by the fact that the attorney's services are of the same general kind as previously rendered to and paid for by the client." *Id.*

The Court allowed the breach of contract claim to go forward, however, on the basis that "a jury could conclude that the parties' conduct and the course of payment evinces an implied contract to continue paying for Defendants' services during the appeal on the same terms" as set forth in the retainer agreement. *Id.* at 40.  In reaching this conclusion, the Court relied on evidence that "Chamberlin . . . paid some invoices that included appellate work." *Id.* at 39. Thus, HBH's breach of contract claim only survived summary judgment on an implied contract theory.  Because HBH did not address that theory in its Summary Judgment Motion, the motion

1    fails as to the breach of contract counterclaim for that reason alone.  Moreover, the Court

2    concludes that there are disputed material facts as to HBH's claim under an implied contract

3    theory, as discussed below.

4          "While an express contract is defined as one, the terms of which are stated in words

5    [citation], an implied contract is an agreement, the existence and terms of which are manifested by

6    *conduct* [citation]." *Levy v. Only Cremations for Pets, Inc.*, 57 Cal. App. 5th 203, 211 (2020)

7    (quoting *Division of Labor Law Enforcement v. Transpacific Transportation Co.*, 69 Cal.App.3d

8    268, 275 (1977) (emphasis added in *Levy*).  "As to the basic elements, there is no difference

9    between an express and implied contract."  Here, there is no dispute that Chamberlin has refused

10   to pay the Outstanding Invoices, which goes to the third element of HBH's breach of contract

11   claim.  There are material disputed facts about the remaining three elements however.

12         First, there are disputed facts about whether an implied contract existed and if it did, what

13   its terms were.  As the Court noted in the February 22, 2022 Summary Judgment Order, there is

14   evidence in the record that Chamberlin paid fees for some appellate work, which could lead a jury

15   to conclude that the parties, through their conduct, had an implied contract to continue HBH's

16   representation of Chamberlin on the same terms as set forth in the retainer agreement. In addition,

17   there is evidence from which a jury conclude that the parties, by their conduct, had an implied

18   contract with different terms from the ones contained in the retainer agreement.  For example,

19   Chamberlin states in his declaration that "[o]n 3 November 2016, [he] wrote to Defendants

20   seeking advance notice before incurring any major fees[,]" stating, "I would like to be judicious in

21   my counsel fees going forward. Please do what is necessary, but alert me to any major work on

22   my behalf."  Chamberlin Summary Judgment Decl. (dkt. no. 201-1) ¶ 41.  According to

23   Chamberlin, he "received no alerts."  *Id.*  ¶ 42. Chamberlain also states in his declaration that he

24   requested a pre-bill of the appellate work and never received one. *Id.* ¶¶ 9, 10.  According to

25   Chamberlin, he received no invoices between September 2017 and July 2018 (the period during

26   which the legal services at issue were performed) and when he received the invoices for that

27   period in July 2018 he emailed Baer and stated, in part:

28         Hi David,

United States District Court
Northern District of California

In January of this year, you said you would provide a prebill. Not getting a prebill, I asked Marlene to pay you in good faith for the remaining appellate work. I also had Marlene send copies of the ethics complaints I filed against my uncle, Hastings, Rask, and Judge Chernus. I have paid $69,741.22 since the case ended by dismissal in March 2017. I would not have authorized spending $120,000+ on this appeal, had I been given that estimate.

*Id.* ¶ 106. In contrast, Baer states in his declaration, without limitation, that Chamberlin "authorized [the] work" covered by the outstanding invoices, Baer Decl. ¶ 7.  Therefore, a jury must decide whether or not there was an implied contract for legal services relating to the work performed in the Outstanding Invoices.[7]

Assuming HBH can demonstrate the existence of an implied contract, the evidence as to the second element of the breach of contract claim (whether HBH reasonably performed its obligations under the contract) is also disputed. Baer states in his declaration that he approved all of the fees listed on the outstanding invoices as reasonable and necessary to Chamberlin's case. Baer Decl. ¶ 7. But Chamberlin states in his declaration that although HBH represented to him that the purpose of the appellate work was to obtain a "re-set" of the case after the appeal of the dismissal order failed and not to "tinker" around with small sums such as unreimbursed funeral expenses of around $6,000,  HBH incurred large amounts in fees simply to obtain small sums, resulting in legal fees that were disproportionate to the relief at issue and inconsistent with the parties' understanding as to the scope of the work.  *See*  Chamberlin Motion Decl., dkt. no. 201-1, ¶¶ 102-105.  Therefore, the Court finds that a jury could conclude that HBH's breach of contract claim fails because it did not reasonably perform its obligations under its contract with Chamberlin.[8]

---

[7] The Court notes, however, that Chamberlin may not argue at trial that there was no implied contract because of the alleged conflict of interest of the HBH firm with respect to Levin.  Nor may he offer evidence to support that position.  The Court definitively concluded that "the familial relationship alleged in the first amended complaint does not constitute a conflict of interest under California law" and dismissed all of Chamberlin's claims that relied on the alleged conflict of interest with prejudice.  *See* Order Regarding Motion to Dismiss  in Part First Amended Complaint, dkt. no. 60 at 9-10.

[8] The Court's conclusions as to the second element of the breach of contract claim leaves undisturbed its holding in the February 2, 2022 Summary Judgment Order that Chamberlin was not entitled to recover his attorneys fees from HBH as damages on his *malpractice* claim.  *See* February 2, 2022 Summary Judgment Order at 32-33 (citing *Herrington v. Superior Ct*., 107 Cal.

United States District Court
Northern District of California

Finally, because there are disputed facts as to the existence and terms of the implied contract and HBH's performance of its obligations under any contract that may have existed, there are also disputed facts related to the amount of damages. Therefore, the Court finds that HBH has failed to establish that it is entitled to summary judgment on its breach of contract counterclaim.

### 2. Book Account

An open book account is defined in Cal. Civ. Proc. Code § 337a(a) as follows:

> The term "book account" means a detailed statement which constitutes the principal record of one or more transactions between a debtor and a creditor arising out of a contract or some fiduciary relation, and shows the debits and credits in connection therewith, and against whom and in favor of whom entries are made, is entered in the regular course of business as conducted by such creditor or fiduciary, and is kept in a reasonably permanent form and manner and is (1) in a bound book, or (2) on a sheet or sheets fastened in a book or to backing but detachable therefrom, or (3) on a card or cards of a permanent character, or is kept in any other reasonably permanent form and manner. A "book account" does not include consumer debt.

Cal. Civ. Proc. Code § 337a(a). In the Court's February 22, 2022 Summary Judgment Order, it found that the 'invoices and billing letters that Defendants have provided are not materially different from the records held to be sufficient" in *In re Roberts Farms Inc*., 980 F.2d 1248, 1252-1253 (9th Cir. 1992). February 22, 2022 Summary Judgment Order at 35-36. The Court further found that "Defendants [had] offered evidence that could support a reasonable conclusion that Defendants' invoices and billing letters reflect an amount owed by Chamberlin, accrued over a series of transactions in the parties' course of dealing." *Id.* at 36. On that basis, the Court denied Chamberlin's motion for summary judgment.

Now HBH seeks summary judgment in its favor on this claim. The existence of a book account, however, is generally an issue of fact. *Etchegaray Farms, LLC v. Lehr Bros., Inc*., 326 F. Supp. 3d 987, 994 (E.D. Cal. 2018) (citing *Cochran v. Rubens*, 42 Cal.App.4th 481, 485, 49 Cal.Rptr.2d 672 (1996)). "[I]n deciding whether a book account exists the court must examine the

---

App. 4th 1052, 1060 (2003)). As the court in *Herrington* explained, "an overpayment for services is contract damages[;] . . . were the law to be otherwise, tort damages would exist in every instance an attorney collected a fee." Thus, while the Court held that Chamberlin is barred from seeking attorneys' fees on his malpractice claim, he may assert as a matter of *contract* that HBH's performance of legal services under the implied contract – if there was one – was not reasonable because "the fees exceed the value of the services received." *Id.*

agreement, or lack of agreement, between the parties and their conduct in the context of their commercial dealing." *Maggio, Inc. v. Neal*, 196 Cal.App.3d 745, 752 (1987). "The mere incidental keeping of accounts does not alone create a book account." *Id.* Evidence that the entries were not made at or near the time of the transactions may give rise to a valid objection to an open book account claim. *Warda v. Schmidt*, 146 Cal. App. 2d 234, 238 (1956) (citation omitted). Moreover, a defendant may "challenge the accuracy and validity of each entry made in a book account." *Etchegaray Farms, LLC v. Lehr Bros., Inc*., 326 F. Supp. 3d at 995 (citing *Interstate Grp. Administrators, Inc. v. Cravens, Dargan & Co*., 174 Cal. App. 3d 700, 708 (1985)).

As discussed above, Chamberlin has presented evidence relating to the conduct of the parties sufficient to create material disputes of fact as to the existence of an implied contract to pay for the legal services listed in HBH's outstanding invoices. Similarly, the Court finds that there are factual disputes based on this evidence as to the existence of a book account and the amount due on that account. Therefore, the Court denies HBH's motion for summary judgment as to this claim.

### 3. Quantum Meruit

In its February 22, 2022 Summary Judgment Order, the Court explained that "[q]uantum meruit refers to the well-established principle that the law implies a promise to pay for services performed under circumstances disclosing that they were not gratuitously rendered." February 22, 2022 Summary Judgment Order at 37 (quoting *Huskinson & Brown v. Wolf*, 32 Cal. 4th 453, 458 (2004) (cleaned up)). It further explained, "To recover in quantum meruit, a party need not prove the existence of a contract but it must show the circumstances were such that the services were rendered under some understanding or expectation of both parties that compensation therefor was to be made." *Id.* While Chamberlin argued that he was entitled to summary judgment because he received no benefit from HBH's services, the Court found that there were, at least, fact questions on that issue, noting that some issues that were addressed in the appellate proceedings appear to have been resolved in his favor.

HBH now asks the Court to enter summary judgment in its favor on this claim, but it does not meet its burden of showing that there are no disputed facts as to this claim. Nor does it

meaningfully address that question in its motion papers.  As discussed above, there are factual

disputes with respect to the understanding of the parties as to the services HBH would provide in

the appellate proceeding and what Chamberlin agreed to pay for, as well as the reasonableness of

the work performed by HBH.  Therefore, liability on the quantum meruit claim cannot be decided

on summary judgment.

**D.      Chamberlin's Summary Judgment Motion**

Chamberlin not only opposes HBH's request for summary judgment and asks the Court to

hold, as a matter of law, that all of his legal fees should be returned to him.  For the reasons stated

above, the Court finds that there are disputed facts as to the remaining counterclaims and

therefore, denies Chamberlin's request for summary judgment on those claims.  The Court also

denies Chamberlin's motion to the extent he seeks an order requiring HBH to return the fees he

already paid. As judgment has already been entered on all of Chamberlin's claims, the Court finds

no basis for awarding such relief.

**E.      What Issues Remain to Be Decided by a Jury vs. the Court**

HBH relies on *Pech v. Morgan*, 61 Cal. App. 5th 841 (2021) in support of the proposition

that the Court, based on its own expertise, can decide on summary judgment whether the fees and

costs HBH seeks were reasonably incurred, obviating the need for a trial on that question.  In

*Pech*, the court observed:

> It is well established . . . that the determination of what constitutes
> reasonable legal services is committed to the discretion of the trial
> court, and the "value of legal services performed in a case is a matter
> in which the trial court has its own expertise." . . . Thus, the "trial
> court may make its own determination of the value of the services
> contrary to, or without the necessity for, expert testimony."

61 Cal. App. 5th at 856 (quoting *Melnyk v. Robledo*, 64 Cal. App. 3d 618, 623 (1976)).  That case,

however, is distinguishable from the circumstances here because it did not involve a summary

judgment motion.

In *Pech*, the plaintiff attorney brought a breach of contract claim against a former client

seeking unpaid legal fees and also sought to attach the defendant's assets under Cal. Code Civ.

Proc. section 483.010.  *Id.* at 855-856.  The attachment proceeding required the attorney to make a

prima facie case that he would likely prevail on the underlying claim and in that context, the court

1 | considered and weighed evidence in making its determination that the legal services the plaintiff

2 | had provided were reasonably performed. *Id.* There is nothing in *Pech*, however, that suggests

3 | that it is proper for a court to make such a factual determination on summary judgment, where

4 | Rule 56 *precludes* the Court from weighing evidence.

5 |      Nor does *Pech* stand for the proposition that because the trial court has expertise as to the

6 | reasonableness of attorneys' fees and costs, questions that would otherwise be decided by a jury

7 | can be taken away from the jury. Indeed, the court in *Pech* did not address that question, and

8 | neither did HBH in its Reply brief, even though Chamberlin argued in his Opposition that he is

9 | entitled to have his claims decided by a jury under the Seventh Amendment. Chamberlin is

10 | correct on this point.

11 |      The Seventh Amendment of the United States Constitution "preserves the right to trial by

12 | jury of all legal claims[,]" and attaches to all legal claims and defenses. *Illinois Union Ins. Co. v.*

13 | *Intuitive Surgical, Inc.*, 179 F. Supp. 3d 958, 960 (N.D. Cal. 2016) (quoting *Dollar Systems, Inc. v.*

14 | *Avcar Leasing Systems, Inc.*, 890 F.2d 165, 170 (9th Cir. 1989)). On the other hand, "the Seventh

15 | Amendment does not extend the right to a jury trial to claims 'of the sort traditionally enforced . . .

16 | in an action in equity.'" *Id.* (quoting *Pernell v. Southall Realty*, 416 U.S. 363, 375 (1974); and

17 | citing *Granite State Ins. Co. v. Smart Modular Techs., Inc.*, 76 F.3d 1023, 1027 (9th Cir.1996) ("A

18 | litigant is not entitled to have a jury resolve a disputed affirmative defense if the defense is

19 | equitable in nature.")). Claims for breach of contract and quantum meruit are legal claims and

20 | therefore, Chamberlin has a right to have his defenses to those claims decided by a jury. *See Infor*

21 | *Glob. Sols. (Michigan), Inc. v. St. Paul Fire & Marine Ins. Co*., No. C 08-02621 JW, 2009 WL

22 | 5909257, at *1 (N.D. Cal. Apr. 2, 2009) (breach of contract); *Jogani v. Superior Ct*., 165 Cal.

23 | App. 4th 901, 905 (2008) (quantum meruit).

24 |      For these reasons the Court finds that HBH's remaining counterclaims, including any

25 | disputes about the reasonableness of the fees and costs that HBH seeks on those claims, must be

26 | heard by a jury.

27

28

**IV.    CONCLUSION**

For the reasons stated above, the Court DENIES the parties' motions in part. The Court declines to rule on Chamberlin's request for an award of expert witness fees and other costs incurred in this action on the basis that he is the prevailing party as that request is premature.  As stated above, the Court also declines to rule on Chamberlin's Motion to Exclude except as to the expert opinions of Baer expressed in his summary judgment declaration.

**IT IS SO ORDERED.**

Dated:  February 22, 2024

_____
JOSEPH C. SPERO
United States Magistrate Judge